Fred **ROBERTS**, et al.,
**Plaintiffs-Appellees,**

v.

**ST. REGIS PAPER COMPANY**, etc., et al., **Defendants-Appellants.**

No. 79–2394.

United States Court of Appeals,
Fifth Circuit.
Unit B

Aug. 10, 1981.

Edward M. Booth, Jacksonville, Fla., for International Ass'n of Machinists.

Benjamin Wyle, Erwin J. Shustak, New York City, for United Paperworkers International Union.

William L. Durden, Jacksonville, Fla., Guy Farmer, Washington, D. C., for St. Regis Paper Co.

Mahon, Mahon & Farley, Joseph S. Farley, Jr., Jacksonville, Fla., Terry R. Yellig, Washington, D. C., for International Broth. of Elec. Workers.

Algia R. Cooper, Tallahassee, Fla., Jack Greenberg, Clyde E. Murphy, New York City, for Fred Roberts et al.

Vella M. Fink, Lutz Alexander Prager, Attys., Lorraine L. Davis. E.E.O.C., Washington, D. C., amicus curiae.

Before KRAVITCH and THOMAS A. CLARK, Circuit Judges, and LYNNE *, District Judge.

KRAVITCH, Circuit Judge:

This appeal presents three questions arising from a 1972 consent decree. Appellees are a class of black employees who in 1970 brought an employment discrimination suit against appellants, their employer and representative labor unions, which suit culminated in the consent decree at issue. In 1979, appellees filed motions for partial summary judgment and preliminary injunction seeking enforcement of the decree; appellants responded that the decree had expired. The district court ruled that the decree remained in effect. We hold that the order appealed from is appealable as of right under 28 U.S.C. § 1292(a)(1) and that the district court correctly held that the consent decree remains binding on the parties.

### I.

In 1970, appellees brought suit against their employer, St. Regis Paper Co., and their representative labor unions alleging racial discrimination in employment practices in violation of Title VII, 42 U.S.C. § 2000e *et seq.* and 42 U.S.C. § 1981. The district court certified the suit as a class action. The plaintiff class was defined as all incumbent black employees at the company's Jacksonville, Florida kraft mill, including those previously laid off, who were initially assigned to certain job classifications. Each member of the class was notified of the suit.

After extensive discovery but prior to any evidentiary hearings, the parties negotiated a settlement, and on January 28, 1972 the district court approved their agreement and entered a consent decree. This decree extended certain privileges to members of the affected class, including, *inter alia,* utilization of a system of mill seniority rather than job or departmental seniority with respect to job assignments. The consent decree contained a disclaimer of any liability and recited that the decree did not "constitute a finding or adjudication of any discriminatory act or practice on the part of the defendants."

The consent decree required the company to submit to the court semi-annual reports concerning both employees within the affected class and new job applicants. The decree also contained a clause entitled "XVI Jurisdiction" which provides:

> Jurisdiction in this action for such other and further relief as may be appropriate consistent with this order is hereby retained until January 1, 1977, unless sooner modified, dissolved or extended.

On December 30, 1976, plaintiffs filed motions for contempt, for further relief, modification and extension of the consent decree, and for extension of jurisdiction *pendente lite* and hearing. In response, defendants argued that the court lacked jurisdiction to entertain the motions and that plaintiffs were guilty of laches. On January 30, 1978, the district court entered an order *nunc pro tunc* December 31, 1976, extending its jurisdiction over the consent decree *pendente lite* of the contempt proceedings, stating:

> In the present case, therefore, the Court holds that plaintiffs' petition for contempt proceedings and motion to extend the Court's jurisdiction were timely filed,

---

* District Judge of the Northern District of Alabama, sitting by designation.

and accordingly invoked the Court's jurisdiction to the extent, and for the purpose of ruling on that petition and motion only. Hence, the Court is not attempting to extend its jurisdiction generally over this case. All that the Court holds is that its jurisdiction was timely invoked to act upon allegations of contempt, and to rule upon the petition timely filed.

The substantive issues raised in the December 30, 1976 contempt motion have not yet been heard or decided.

On February 28, 1979, plaintiff class filed a motion for preliminary injunction and partial summary judgment, seeking an order declaring defendants to be continually obligated "to abide by the provisions of the Consent Decree mandating the permanent use of mill seniority when members of the affected class compete for employment positions." The defendants responded that under Clause XVI the district court lacked jurisdiction over the decree; in essence, they contended that the consent decree had a term of only five years that expired on January 1, 1977. Alternatively, they claimed that continued enforcement of the seniority provisions of the consent decree would be contrary to existing law, specifically, the Supreme Court's decision in *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). On April 19, 1979, the district court held that Clause XVI did not limit the life of the decree and that it was intended to have lasting effect; consequently, the court held that it had jurisdiction to consider alleged violations of the consent decree that occurred after January 1, 1977.[1] It is from that ruling that defendants appeal to this court.[2]

II.

As a preliminary issue, we must determine whether the district court's order of April 19, 1979 is appealable so as to vest jurisdiction in this court.[3] 28 U.S.C. § 1291 provides that all final orders of the district courts are directly appealable to the court of appeals. The order appealed from in this case, however, is plainly not a final order. The district court did not rule on the motions for summary judgment and preliminary injunction, instead referring the case to a magistrate for further evidentiary hearings.

Under 28 U.S.C. § 1292 certain interlocutory orders of the district court may be appealed directly. Specifically relevant here is § 1292(a)(1), which provides that an appeal may be taken from an interlocutory order that grants, continues, modifies, refuses or dissolves, or refuses to dissolve or modify an injunction.

This court consistently has held that the appealability of an order under 28 U.S.C. § 1292 depends not on terminology but on the substantive effect of the order. *See, e. g., Martinez v. Mathews*, 544 F.2d 1233, 1236 (5th Cir.1976) (district court's order that interim board be elected was appealable because effect and character of the order was injunctive); *Sayers v. Forsyth Building Corp.*, 417 F.2d 65, 67 (5th Cir. 1969) (district court's order directing parties to litigate in state court was injunctive in nature and thus appealable under 28 U.S.C. § 1292(a)(1)); *McCoy v. Louisiana State Board of Education*, 345 F.2d 720, 721 (5th Cir.1965) (appealability of order depends, not on terminology, but on substantial effect of order); *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir.), *cert. denied*, 371 U.S. 893, 83 S.Ct. 187, 9 L.Ed.2d 125 (1962)

1. The court held that it had jurisdiction "to determine whether the duties and obligations agreed to are fulfilled by all the parties." The court did not rule as to whether appellants had in fact violated the decree. The court referred that issue to the magistrate for a report and recommendation. Nor did the court rule on defendants' alternative contention that the consent decree was contrary to current law.

2. The Equal Employment Opportunity Commission filed briefs and argued before this court as amicus curiae, urging that we affirm the court below.

3. None of the parties addressed the appealability of the order in their original briefs. Because this is jurisdictional, this court *sua sponte* raised the issue and requested supplemental briefs from all parties.

(district court's failure to rule on motion for injunction is equivalent to denial of injunction and appealable as such).

■ The district court in this case, although asked to rule on a motion for preliminary injunction, in its order neither granted nor refused to grant an injunction, instead sending the motion to a magistrate to conduct evidentiary hearings. The consent decree itself, however, entered by the court in 1972 and which appellees by the 1979 motion sought to enforce, provides for affirmative injunctive relief. It is settled that a consent decree may constitute an injunction for purposes of § 1292(a)(1). *See, e. g., Carson v. American Brands, Inc.,* 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981); *Myers v. Gilman Paper Co.,* 544 F.2d 837, 847 (5th Cir.), *modified on other grounds,* 556 F.2d 758 (1977). The specific provision of the decree at issue (clause II.B) orders the defendants to permanently utilize a system of mill seniority with respect to the affected class. In response to plaintiffs' motion, defendants contended that all provisions of the decree had expired; in essence, they asked the court to dissolve the injunction. In holding that the decree continues to be viable, the court's order had the practical effect of refusing to dissolve the injunction.

■ The Supreme Court has recently reaffirmed that "[f]or an interlocutory order to be immediately appealable under § 1292(a)(1) . . ., a litigant must show more than that the order has the practical effect of refusing an injunction." *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 996, 67 L.Ed.2d 59 (1981). Appeal as of right under § 1292(a)(1) is available only if the appellant can show that the interlocutory order "might have serious, perhaps irreparable, consequence" and that the order may be "effectually challenged" only by immediate appeal. *Id.* at 84, 101 S.Ct. at 996; *Bal-*

*timore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233 (1955). In *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 98 S.Ct. 2451, 57 L.Ed.2d 364 (1978) and *Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc.,* 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966), the Court held interlocutory orders that refused the injunctive relief requested in the complaint not appealable because the orders lacked "serious, perhaps irreparable" consequences. In both cases, the petitioners had sought permanent injunctive relief only, and had neither filed motions for preliminary injunction nor alleged that denial of their motions would cause irreparable harm.

■ By contrast this case involves not a refusal to *grant* an injunction, but rather a refusal to *dissolve* an injunction. Appellants here, as a result of the district court order, are currently obligated under the 1972 decree to utilize mill seniority with respect to the affected class of employees. Appellants contend that under their interpretation of the consent decree their obligation to abide by the terms of the decree expired on January 1, 1977; accordingly, the company announced in early 1979 that it no longer would utilize mill seniority for any employees. In its order of April 19, 1979, the district court declared that the consent decree had lasting effect, thereby ordering appellants to abide by all of the terms of the decree (including clause II.B concerning the use of seniority). We conclude this refusal to dissolve the injunction has "serious, perhaps irreparable, consequence" for appellants, and may be "effectually challenged" only by immediate review.[4] We hold, therefore, that the order is appealable under 28 U.S.C. § 1292(a)(1).

### III.

We now turn to the merits of the controversy, i. e., whether the consent decree un-

4. The district court held that appellants are obligated to abide by the terms of the decree; the only issue pending in the district court is whether appellants have in fact violated the decree. Thus, appellants have effectively been enjoined during the pendency of the proceed-

ings to fulfill their obligations under the decree. The grant of a preliminary injunction is the type of order that necessarily has serious consequences and may be challenged only by immediate review.

der its own terms expired after five years. Appellants rely heavily on Clause XVI of the decree, which recites:

Jurisdiction in this action for such other and further relief as may be appropriate consistent with this order is hereby retained until January 1, 1977, unless sooner modified, dissolved or extended.

They contend that the decree was neither modified, dissolved, nor extended· prior to January 1, 1977, and under its specific terms, the decree expired and is no longer viable. Appellees, on the other hand, contend that the jurisdictional clause has nothing to do with the life of the decree itself. They point to the language of Clause II.B which provides that the company will "permanently" utilize a system of mill seniority for the affected class of employees.[5] The jurisdictional clause, according to appellees, pertains to the period of time during which the court could grant further relief *not* embodied in the decree.

■ A consent decree is basically a contract between the parties and must be construed in the light of traditional tenets of contract construction. *United States v. ITT Cont. Baking Co.*, 420 U.S. 223, 236, 95 S.Ct. 926, 934, 43 L.Ed.2d 148 (1975); *Eaton v. Courtaulds of North America*, 578 F.2d 87, 90–91 (5th Cir.1978). As stated in *United States v. Armour & Co.*, 402 U.S. 673, 681–82, 91 S.Ct. 1752, 1757–58, 29 L.Ed.2d 256 (1971):

[T]he decree itself cannot be said to have a purpose; rather the parties have purposes, generally opposed to each other, and their resultant decree embodies as much of those opposing purposes as the respective parties have the bargaining power and skill to achieve. For these reasons, the scope of a consent decree must be discerned within its four corners, and not by reference to what might satisfy the purposes of one of the parties to it. (emphasis and footnote omitted)

Therefore, unless the decree is ambiguous, we must find the meaning of the decree in its language, without resort to extrinsic considerations. Moreover, we presume that all parts of the decree have meaning and must be construed together. *See Eaton, supra.*

■ Appellants would have us read Clause XVI as defining the term of the decree's existence. The clause itself, however, is entitled "Jurisdiction" and refers to the retention of jurisdiction by the district court "for such other and further relief as may be necessary." Nothing in Clause XVI refers to the life of the decree itself; nor does any other provision of the decree limit in any way the period of time in which the duties and obligations embodied in the decree are to be carried out. Clause II.B, on the other hand, expressly declares: "The defendants are ordered to ,utilize *permanently* in place of job or departmental seniority a system of mill seniority." (empha-

5.  Clause II.B provides:

B. The defendants are ordered to utilize permanently in place of job or departmental seniority a system of mill seniority with respect to temporary and permanent job assignments, including promotions, demotions and selection for training of affected class employees as follows:

(1) Total mill seniority (*i. e.*, the length of continuous service in the mill) alone shall determine who the "senior" bidder or employee is for purposes of all temporary or permanent promotions, temporary or permanent demotions, including layoffs and recalls, and for training, whenever one or more of the competing employees is an affected class employee, subject to the following:

(a) If, after all affected class employees are eliminated from competition and there remain more than one nonaffected class em‑ployee in competition, job or departmental seniority shall apply in the ordinary way; and ·

[R. 815] (b) Any affected class employee who waives promotion four times after entry of this Order shall lose any further rights which he might have under this Order to exercise mill seniority.

(2) Except as otherwise provided by this Order, the waiver provisions set forth in the labor agreements between the Company and the Defendant Unions shall remain in effect. Persons promoted shall go around a waived position in any job classification, that is a job classification filled by employees who have waived promotion to the next higher job classification in that line of progression, and persons demoted shall likewise go around such a position on the way down.

sis added) We must assume that the parties employed the word "permanently" because they intended the seniority provision of the decree to continue in perpetuity.

We find that the five-year limitation on jurisdiction of Clause XVI does not conflict in any way with the injunction of Clause II.B that the defendants permanently utilize mill seniority. The jurisdictional clause refers to "such other and further relief as may be appropriate consistent with this Order." We interpret this language as granting to the court during the five-year period the power to modify the decree and to grant additional relief not embodied in the decree.[6] This clause in no way affects the relief already mandated in the decree.

■ Appellants further contend that the order of the district court contravenes its earlier ruling of January 30, 1978, on appellees' motion for contempt and other relief. Appellees filed that motion on December 30, 1976, two days before the date jurisdiction was to lapse under Clause XVI. In its order, the court declared:

> [T]he Court is not attempting to extend its jurisdiction generally over this case. All that the Court holds is that its jurisdiction was timely invoked to act upon allegations of contempt, and to rule upon the petition timely filed.

Appellants contend that the timing of appellees' motion for contempt and other relief, and the limited holding of the district court as to its jurisdiction, reveal that appellees and the court had previously construed the consent decree as expiring on January 1, 1977. We disagree. Appellants' argument misses a crucial distinction between the subject matter of the December 30, 1976 motion and the February 28, 1979 motion for partial summary judgment. The December 1976 motion, while alleging violations of the consent decree, also sought to obtain further relief not embodied in the decree. Under the terms of the decree, the court was empowered to grant such additional relief only until January 1, 1977. By contrast, the February 1979 motion sought to enforce the terms of the decree itself, specifically, the provisions of Clause II.B relating to seniority. Because the decree enjoins appellants permanently to utilize a system of mill seniority, the court retains jurisdiction to determine whether the parties are fulfilling their obligations under the decree.

■ The district court order before us declares that the entire consent decree remains in full force and effect in perpetuity. In their motions for preliminary injunction and partial summary judgment, however, the relief requested by appellees was less comprehensive. Appellees' motions raised only the issue of seniority as embodied in Clause II.B of the decree. Our holding, therefore, is more limited than that of the district court. We hold that under its own terms the consent decree continues to require appellants to utilize a system of mill seniority with respect to the affected class. Any issues arising under the other substantive provisions of the decree are not before us; hence, we do not decide them.

## IV.

Finally, appellants contend that even if the decree by its own terms remains viable, it is no longer equitable to enforce it against them. They argue that the seniority provisions of the decree are in direct conflict with *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), and that these provisions of the decree therefore should be modified.

■ A court of equity has inherent power to modify the prospective effect of its decrees in response to changed circumstances. *System Federation No. 91 v. Wright*, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961); *United States v. Swift & Co.*, 286 U.S. 106, 114, 52 S.Ct. 460, 462, 76 L.Ed. 999 (1932). Rule 60(b)(5), Fed.R.Civ.P., permits such modification upon a motion brought

---

**6.** Appellees contend that the jurisdictional clause was also intended to provide a period during which appellants were to file with the court semi-annual reports pursuant to Clause IX dealing with members of the class and new job applicants.

within a reasonable time when the district court is convinced "it is no longer equitable that the judgment should have prospective application." The defendants in this case have not filed a motion to modify the consent decree pursuant to Rule 60, which provides in part: ". . . . the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action." Rule 7(b)(1), Fed. R.Civ.Proc., sets forth the contents required for motions and prescribes that motion should be in writing and ". . . shall state with particularity the grounds therefor . . . ." The defendants did, however, file briefs in opposition to plaintiff's motion for preliminary injunction and summary judgment in which they argued that the 1972 consent decree should not be enforced against them because of the 1977 decision in *Teamsters*.

Prior to *Teamsters*, the law in this circuit permitted modification of existing seniority systems which perpetuated the effects of past discrimination, without a showing of discriminatory intent. *See, e. g., United States v. Jacksonville Terminal Co.*, 451 F.2d 418 (5th Cir. 1971); *Local 189, United Papermakers and Paperworkers v. United States*, 416 F.2d 980 (5th Cir. 1969), *cert. denied*, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970). This rule was changed by *Teamsters*, in which the Supreme Court held that the courts may not modify a *bona fide* seniority system (i. e., a system neither established nor operated with a discriminatory purpose) even if it perpetuates the effects of past discrimination.[7] Appellants vigorously contend that since the prevailing interpretation of Title VII underpinning the seniority provisions of the consent decree were invalidated in *Teamsters*, it is inequitable to permit prospective enforcement of that decree.

This court recently has held that a significant change in decisional law will permit the district court in its sound discretion to prospectively modify a permanent injunction under Rule 60(b)(5). *United States v. Georgia Power Co.*, 634 F.2d 929 (5th Cir. 1981).[8] In *Georgia Power Co.*, we were faced with a *Teamsters*-based challenge to a consent decree. In that case the district court held that a consent decree altering a bona fide seniority system can be modified under *Teamsters* and that there was no evidence that the system at issue was not bona fide. Accordingly, the court modified prospectively the consent decree. On appeal, we agreed that the district court may in its discretion modify a pre-*Teamsters* consent decree that altered an existing bona fide seniority system, but reversed the district court on the ground that the record indicated the seniority system was not bona fide and hence did not come within the *Teamsters* holding.[9]

Because we reverse the district court on the ground that *Teamsters* did not justify modification of the decree, it is probably not necessary to discuss whether the court otherwise had the power to modify its earlier final decree. A short examination of that question may be in order, however, because the point is asserted on this appeal and if the court had no such power, we would never reach the issue concerning *Teamsters*.

.  .  .  .

[W]e conclude that in this Circuit, given otherwise appropriate circumstances, a significant modification in decisional law will permit the district court in its sound discretion to prospectively modify a permanent injunction under Rule 60(b)(5).

634 F.2d at 932–34.

---

**7.** Section 703(h) of Title VII, 42 U.S.C. § 2000e–2(h), provides in part:

Notwithstanding any other provision of this subchapter, it shall not be an unlawful employment practice for an employer to apply different standards of compensation, or different terms, conditions, or privileges of employment pursuant to a bona fide seniority . . . system, . . . provided that such differences are not the result of an intention to discriminate because of race . . . or national origin. . . .

In *Teamsters* the Court held that Congress in § 703(h) intended to protect existing seniority systems even where the employer's pre-Act discrimination resulted in whites having greater existing seniority rights than blacks, and thereby perpetuated the effects of the discrimination.

**8.** In *Georgia Power*, we stated:

**9.** *Georgia Power* cites with apparent approval the case of *EEOC v. Safeway Stores, Inc.*, 611 F.2d 795 (10th Cir. 1979), *cert. denied*, 446 U.S.

It is clear from our holding in *Georgia Power* that the courts have the power to modify consent decrees based upon intervening laws and decisions, but that not every consent decree is subject to modification. The most masterful opinion on the subject of modification of consent decrees is that of Justice Cardozo in *United States v. Swift & Co.*, 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932). A more recent opinion by now Justice Blackmun writing for the Eighth Circuit in *Humble Oil & Refining Co. v. American Oil Co.*, 405 F.2d 803 (8th Cir. 1969) explained after quoting from Justice Cardozo's opinion in the *Swift* case:

> We glean, from this, certain factors of importance: (1) that, where modification and amendment of an existing decree is under consideration, there are "limits of inquiry" for the decree court and for the reviewing court; (2) that the inquiry is "whether the changes are so important that dangers, once substantial, have become attenuated to a shadow"; (3) that the movants must be "suffering hardship so extreme and unexpected" as to be regarded as "victims of oppression"; and (4) that there must be "[n]othing less than a clear showing of grievous wrong evoked by new and unforeseen conditions." Placed in other words, this means for us that modification is only cautiously to be granted; that the dangers which the decree was meant to foreclose must almost have disappeared; that hardship and oppression, extreme and unexpected, are significant; and that the movants' task is to provide close to an unanswerable case. To repeat: caution, substantial change, unforeseenness, oppressive hardship, and a clear showing are the requirements.

405 F.2d at 813.

■ In the case *sub judice*, the district court did not rule on whether *Teamsters* permits modification of the decree. Unlike *Georgia Power,* there is no evidence in this record as to the bona fides of the seniority system [10]; this question has never been liti-

---

952, 100 S.Ct. 2918, 64 L.Ed.2d 809 (1980), which court stated:

> Intervenors assert an additional ground for impeaching the consent decree. They argue that *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), decided after the decree and interpretive order were entered, compels modification. In interpreting § 703(h) of Title VII, the Supreme Court in *Teamsters* held that "an otherwise neutral, legitimate seniority system does not become unlawful under Title VII simply because it may perpetuate pre-Act discrimination." *Id.* at 353–54, 97 S.Ct. at 1864. We are not obliged to decide for this appeal what impact *Teamsters* would have on a consent decree reached after *Teamsters* was decided or on the outcome of subsequent litigation between these parties. We decide only that *Teamsters* does not require retroactive alteration of the consent decree in this case.

A similar situation was presented in *Collins v. City of Wichita*, 254 F.2d 837 (10th Cir. 1958). After the original judgment in *Collins* became final, the Supreme Court reviewed, in another case, the statute upon which the judgment was based and found it unconstitutional. In denying a Rule 60(b) motion based on the subsequent Supreme Court decision, this court held, "A change in the law or in the judicial view of an established rule of law" is not an extraordinary circumstance justifying relief. *Id.* at 839. The Third Circuit confronted a similar change in the case law on a Rule 60(b) motion in *Mayberry v. Maroney*, 558 F.2d 1159 (3d Cir. 1977). It concluded that the power to alter decrees "does not contemplate relief based merely on precedential evolution." *Id.* at 1164. *See also Chicot County Drainage District v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

There are some situations where a change in the law warrants modification of an injunctive decree. For instance, in *System Federation v. Wright*, 364 U.S. 642, 81 S.Ct. 368, 5 L.Ed.2d 349 (1961), the Supreme Court balanced the policies of finality and flexibility and determined that an amendment of the statute underlying an earlier decree made prospective enforcement of the decree inequitable. However, it was the prospective injunctive effect of the decree at issue in *System Federation.* The Court did not purpose to erase retroactively the effect of the decree. 611 F.2d at 800–01.

**10.** In *James v. Stockham Valves & Fitting Co.*, 559 F.2d 310 (5th Cir. 1977), we listed four factors to be considered in determining whether there has been purposeful discrimination: whether the seniority system operates to discourage all employees equally from transferring between seniority units; whether the seniority units are in separate bargaining units and, if so, whether that structure is rational

gated, and the decree itself expressly disclaims any finding of discriminatory purpose. Thus, an appellate court cannot review this issue. Moreover, whether equity requires modification of the decree also must be determined in the first instance by the trial court upon a proper motion.

In summary, we hold that the seniority provisions of the decree remain binding on appellants; hence, we affirm. We do not decide whether *Teamsters* requires prospective modification of the decree; appellants are free, however, to raise this issue by proper motion.

AFFIRMED.

and in conformance with industry practice; whether the seniority system had its genesis in racial discrimination; and whether the system was negotiated and has been maintained free from any illegal purpose. 559 F.2d at 352. The court must examine the totality of the circumstances surrounding the seniority system, and factors in addition to the ones listed may be considered. *See Terrell v. United States Pipe & Foundry Co.*, 644 F.2d 1112 (5th Cir. 1981); *United States v. Georgia Power Co.*, 634 F.2d 929 (5th Cir. 1981); *Pettway v. American Cast Iron Pipe Co.*, 576 F.2d 1157 (5th Cir. 1978), *cert. denied*, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed.2d 74 (1979).