752 F.2d 1092
 1 Fed.R.Serv.3d 152
 Barbara SHANKS, Executor of the Estate of Marvin Daniels,
Individually and as Next Friend for Sigmand
Daniels & Marvin Daniels, II, Minor
Heirs of Marvin Daniels,
Plaintiffs-Appellants,
v.
CITY OF DALLAS, TEXAS, A Municipal Corporation, Etc., et
al., Defendants- Appellees.
 No. 84-1079.
 United States Court of Appeals,
Fifth Circuit.
 Feb. 15, 1985.
 
 James C. Barber, Dallas, Tex., for plaintiffs-appellants.
 Araleslie Muncy, City Atty., Kent S. Hofmeister, Joseph G. Werner, Asst. City Attys., Dallas, Tex., for defendants-appellees.
 Appeal from the United States District Court for the Northern District of Texas.
 Before GARZA, RANDALL and TATE, Circuit Judges.
 RANDALL, Circuit Judge:
 
 
 1
 In this civil rights case, plaintiffs-appellants Barbara Shanks and Warren McKinley seek interlocutory review of an order of the district court denying class certification. The district court denied certification on the ground that the plaintiffs lacked standing to prosecute a claim for equitable relief, the only relief being sought by the plaintiffs in their capacity as class representatives. Because we find that the district court's denial of class certification is not reviewable pending final judgment, we dismiss the case for lack of subject matter jurisdiction.
 
 I.
 
 2
 Barbara Shanks and Warren McKinley brought this action under 42 U.S.C. Sec. 1983 seeking (1) damages for certain injuries and (2) equitable relief on behalf of themselves and a class to redress an alleged practice and custom of the Dallas police department in using excessive force in a racially discriminatory manner. Shanks and McKinley contend, inter alia, that the City of Dallas, one of the defendants herein, maintains the policy and practice of encouraging racially motivated and excessive force by police. The equitable relief requested is a permanent injunction against the City of Dallas from committing excessive acts of violence against the named plaintiffs and the class because of their race; further, they ask for an injunction requiring the City to implement "a fair and objective police misconduct review policy, either incorporating elements of civilian review or otherwise, requiring some neutral, objective entity to review allegations of police misconduct."
 
 
 3
 Shanks and McKinley have defined their class as all black persons who (since September 28, 1979) have been, continue to be, or might become adversely affected by racially motivated, excessive, and unjustified police violence against black persons in the City of Dallas. At the class certification hearing, Shanks and McKinley, in attempting to demonstrate the propriety of class certification, relied heavily on statistical evidence that was drawn from recorded incidents of shooting or killing by police officers during the years 1973-1981. The statistics revealed that the percentage of such incidents in which black persons were shot or killed is higher than either the percentage of black persons in the population or the percentage of black persons who were arrested for all crimes. Shanks and McKinley contend that the difference is statistically significant and reflects a pattern of racially biased use of force by Dallas police officers.
 
 
 4
 On August 30, 1983, the district court denied the motion for class certification. In the opinion accompanying the order, the court first stated that, as a general proposition, if the named representatives of a class lacked standing individually to obtain the desired relief, the class as a whole lacked standing. The court then, applying the principles recently articulated by the Supreme Court in City of Los Angeles v. Lyons, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), found that in the instant case Shanks and McKinley had failed to allege a real and immediate threat of harm to themselves and thus had not demonstrated a case or controversy with the City that would justify equitable relief. Finally, the court concluded that, because Shanks and McKinley lacked standing to seek equitable relief, the putative class as a whole lacked standing and therefore could not be certified. The court subsequently on December 20, 1983, reaffirmed its denial of class certification and on February 15, 1984, refused to stay the proceedings on the plaintiffs' damage claim pending interlocutory appeal of its order.[1] This appeal followed.
 
 II.
 
 5
 The threshold, and in this case dispositive, issue before us is whether we have the jurisdiction to hear this appeal. Because the district court's order denying class certification did not in any way preclude Shanks and McKinley from proceeding with the damages component of their complaint, there is no question that the order at issue here is not a final judgment within the meaning of 28 U.S.C. Sec. 1291.[2] Shanks and McKinley thus base their appeal on 28 U.S.C. Sec. 1292(a)(1), which gives this Court jurisdiction over interlocutory orders "granting, continuing, modifying, refusing, or dissolving injunctions."[3]
 
 
 6
 In Carson v. American Brands, Inc., 450 U.S. 79, 101 S.Ct. 993, 67 L.Ed.2d 59 (1981), the Supreme Court clarified the general circumstances in which Sec. 1292(a)(1) would permit the appeal of an interlocutory order. First, the Court construed the section to include not only orders technically granting or denying injunctions, but also those that have the practical effect of doing so. Id. at 84, 101 S.Ct. at 996; see also United States v. Garner, 749 F.2d 281 (5th Cir.1985); Gould v. Control Laser Corp., 650 F.2d 617, 621 (5th Cir.1981). A clear distinction, however, has been made between those orders that dispose of the claim for relief on the merits or on jurisdictional grounds and those that relate only to pretrial procedures. The Sec. 1292(a)(1) exception to the final judgment rule embodies only orders that have a direct impact on the merits of the controversy or pass on the legal sufficiency of the complaint. See, e.g., Gardner v. Westinghouse Broadcasting Co., 437 U.S. 478, 481-82, 98 S.Ct. 2451, 2453-54, 57 L.Ed.2d 364 (1978) (refusal of district court to certify class under Federal Rule of Civil Procedure 23 related to pretrial procedures and thus was not appealable under Sec. 1292(a)(1)); Switzerland Cheese Ass'n v. Horne's Market, 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966) (order denying plaintiff's motion for summary judgment on claim for injunction was not appealable since it did not relate to merits of the claim); General Electric Co. v. Marvel Rare Metals Co., 287 U.S. 430, 433, 53 S.Ct. 202, 203, 77 L.Ed. 408 (1932) (order dismissing on jurisdictional grounds counterclaim seeking injunction held to be appealable under Sec. 1292(a)(1)); Commodity Futures Trading Comm'n v. Preferred Capital Investment Co., 664 F.2d 1316, 1320 (5th Cir.1982) (Sec. 1292(a)(1) did not permit appeal of order dismissing one of several defendants from suit because of plaintiff's discovery abuses since order did not touch merits of the claim).
 
 
 7
 Shanks and McKinley argue that the district court's order denying class certification had the practical effect of denying an injunction on its merits because the basis for the denial was their lack of standing to obtain any injunctive relief whatsoever, either for themselves or for the class. We agree. This is not, for example, a case such as Gardner v. Westinghouse Broadcasting Co., supra, in which the district court denied class certification because it found that the petitioner had not satisfied the commonality and typicality prerequisites of Federal Rule of Civil Procedure 23. Rather, in the case at hand, the district court's order was predicated on a finding that upon the facts alleged in the complaint Shanks and McKinley were not entitled to an injunction. The Supreme Court's holding in Gardner that the order therein was not appealable because it did not touch the merits of the petitioner's claim for relief is therefore inapposite. Shanks and McKinley here do not appeal the certification order as an independent matter but seek to challenge the underpinning determination that they lack standing as a matter of law to seek injunctive relief. Under these circumstances, we think the observation we made in Payne v. Travenol Laboratories, 673 F.2d 798 (5th Cir.), cert. denied, 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982), is pertinent here:
 
 
 8
 To hold that section 1292(a)(1) does not permit interlocutory appeals of denials of class certification, even if injunctive relief might thereby be compromised, is one thing; to hold that section 1292(a)(1) does not permit review of the district court's definition of a class when a denial of injunctive relief turns on that ruling is quite another.
 
 
 9
 Id. at 808. Because the district court's refusal to certify the class was rooted in a conclusion that Shanks and McKinley were precluded on the merits from obtaining injunctive relief, we hold that the order had the practical effect of denying an injunction under Carson.
 
 
 10
 The second general prerequisite to interlocutory review under Carson is that the litigant must show that the order having the practical effect of granting or denying an injunction "might have 'serious, perhaps irreparable, consequences,' and that the order can be 'effectively challenged' only by immediate appeal." Carson, 450 U.S. at 84, 101 S.Ct. at 996; see also Roberts v. St. Regis Paper Co., 653 F.2d 166, 170 (5th Cir.1981); Gould, supra, at 621.[4] Shanks and McKinley contend that "serious, perhaps irreparable, consequences" are threatened here since failure to review the district court's denial of injunctive relief would allow the City of Dallas' alleged discriminatory practices to continue "not only during the course of the trial court phase of this litigation, but during the inevitably lengthy appeal of the district court's decision to deny standing to seek injunctive relief."[5]
 
 
 11
 We think that Shanks and McKinley misconceive the scope of the "serious, perhaps irreparable, consequence" requirement. The need to show such consequences is the result of the balance struck by Congress in Sec. 1292(a)(1) between the interests of the judiciary in limiting expensive and wasteful piecemeal appeals and the interests of the litigant in avoiding the immediate impact of interlocutory orders. Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 180-81, 75 S.Ct. 249, 251-52, 99 L.Ed. 233 (1955). Hence, in determining whether an order has the necessary irreparable effect, we must consider only that harm attributable to the delay in reviewing the order. If an order would have the same serious consequences irrespective of whether it is reviewed immediately or upon final judgment, the requirement of irreparable harm has not been met for purposes of Sec. 1292(a)(1). See Gardner v. Westinghouse Broadcasting Co., supra, at 480-81, 98 S.Ct. at 2453; Baltimore Contractors, Inc. v. Bodinger, supra, at 180-81, 75 S.Ct. at 251-52; Center for National Security Studies v. Central Intelligence Agency, 711 F.2d 409, 412 (D.C.Cir.1983). Moreover, it is clear that the mere possibility of harm is not sufficient to warrant the invocation of Sec. 1292(a)(1). Rather, the appellant must show at least a substantial likelihood that delay in reviewing the order will result in irreparable harm. Baltimore Contractors, supra; Shirey v. Bensalem Township, 663 F.2d 472, 476 (3d Cir.1981).
 
 
 12
 With these principles in mind, it becomes clear that Sec. 1292(a)(1) functions primarily to allow interlocutory review of orders having the effect of granting or denying preliminary, and not permanent, injunctions. A preliminary injunction is typically granted during the pendency of a lawsuit to prevent irreparable injury that may result before a final decision on the merits. Compact Van Equipment Co. v. Leggett & Platt, Inc., 566 F.2d 952, 954 (5th Cir.1978); Canal Authority of Florida v. Callaway, 489 F.2d 567, 572 (5th Cir.1974). Thus, to obtain a preliminary injunction, a movant must prove a substantial threat that he will suffer irreparable harm if the injunction is not granted. City of Meridian v. Algernon Blair, Inc., 721 F.2d 525 (5th Cir.1983); Callaway, supra, at 572. The erroneous denial of a preliminary injunction, therefore, will necessarily result in the type of serious consequence that Sec. 1292(a)(1) is designed to prevent. A permanent injunction, on the other hand, is usually granted only after a full trial on the merits of the particular suit. To obtain permanent equitable relief, a party need only show that "there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive." United States v. W.T. Grant Co., 345 U.S. 629, 633, 73 S.Ct. 894, 898, 97 L.Ed. 1303 (1953). The erroneous interlocutory denial of a permanent injunction, therefore, will only on occasion threaten the type and certainty of injury attributable to the delay in reviewing the order that would justify immediate appeal.[6]
 
 
 13
 In their brief, Shanks and McKinley assert that the irreparable consequences threatened here are similar to that which served as a basis for interlocutory appeal in Carson, supra. We disagree. In Carson, the parties jointly moved the district court to approve a consent decree that would have had the effect of permanently requiring the defendant in the action to give hiring and seniority preferences to black employees and to fill one-third of all supervisory positions in a specified department with qualified black persons. 450 U.S. at 81-82, 101 S.Ct. at 995. The Supreme Court held that Sec. 1292(a)(1) permitted interlocutory appeal of the district court's order because, inter alia, the defendant's discriminatory transfer and promotional policies would continue unabated, resulting in irreparable injury, until the settlement was approved. Id. at 89, 101 S.Ct. at 999.[7] Assuming the validity of the plaintiff's factual allegations, therefore, the irreparable harm threatened in that case was certain to occur and directly attributable to the delay that would have resulted if the litigant had to wait for final judgment to obtain appellate relief.
 
 
 14
 In the case at hand, however, even assuming the truth of the factual allegations of Shanks and McKinley, the serious, perhaps irreparable, consequences threatened are far from certain to occur, at least insofar as they can be attributed to the delay in appellate disposition of the district court's order denying certification. An examination of first the procedural posture of this case and second the likelihood that delay in reviewing the court's order will result in a net delay in the final issuance of an injunction should make this point clear.
 
 
 15
 In the court below, injunctive relief was effectively denied in the context of a motion to certify the class. Thus, the district court could not have granted the injunction regardless of its ruling on the motion. Moreover, because Shanks and McKinley were required to proceed with their claim for damages, the district court's order denying certification did not nor will in the future affect or delay the ultimate resolution of the underlying substantive factual controversy of the case--that is, whether the City of Dallas encourages, either explicity or implicity, the use of excessive force in a racially discriminatory manner. Thus, if ordered to do so upon appeal from its final judgment, the district court should be able to fashion appropriate equitable relief upon remand without a new trial.
 
 
 16
 The upshot of all this is that the time delay to which the irreparable consequences must be attributed will not begin until at least after final judgment, the earliest possible date that affirmative relief could be granted even if the district court had certified the class. We, however, cannot now assume that this time delay will be caused solely by the lack of interlocutory review since other, independent causes may very well create the same delay in obtaining relief. Indeed, if, for example, on interlocutory appeal we were to reverse the district court's order denying class certification before final judgment, Shanks and McKinley would be faced with the same time delay in obtaining equitable relief that they would have been confronted with in the absence of such review if (1) they were not successful at the district court level on the merits or (2) they were successful but the injunction was stayed pending defendants' appeal. See Fed.R.Civ.P. 62(c); Fed.R.App.P. 5. Similarly, if we were on interlocutory appeal able to reverse the district court's order but only after final judgment had been entered, Shanks and McKinley would be faced with the same delay if (1) they were unsuccessful at the district court level or (2) they were successful but the defendants appealed the substantive result. Under any of these circumstances, final equitable relief, if called for in this case, would not be ordered into effect until after the appeal and on remand to the district court, the same point in time that relief would become available if Shanks and McKinley had to wait until final judgment to appeal the certification order.[8]
 
 
 17
 Because of the uncertainty described above, we are unable to say that, but for interlocutory review, the district court's order will result either in serious, perhaps irreparable, consequences or in a significant threat of serious, perhaps irreparable, consequences. We therefore find the irreparable harm alleged by Shanks and McKinley to be too contingent and remote to warrant interlocutory appeal under Sec. 1292(a)(1).[9] In so holding, we of course express no opinion on the ultimate merits of the complaint or the district court's order denying class certification.
 
 III.
 
 18
 For the reasons stated above, we dismiss the appeal for lack of subject matter jurisdiction.
 
 
 19
 DISMISSED.
 
 
 
 [1]
 The district court also on February 15, 1984, denied Shanks and McKinley permission to appeal its order under 28 U.S.C. Sec. 1292(b)
 
 
 [2]
 28 U.S.C. Sec. 1291 provides:
 The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. The jurisdiction of the United States Court of Appeals for the Federal Circuit shall be limited to the jurisdiction described in sections 1292(c) and (d) and 1295 of this title.
 The Supreme Court has held that an order is final within the meaning of Sec. 1291 when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Firestone Tire & Rubber Co. v. Risjord, 449 U.S. 368, 373, 101 S.Ct. 669, 672, 66 L.Ed.2d 571 (1981); Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945).
 
 
 [3]
 28 U.S.C. Sec. 1292(a) provides in pertinent part:
 (a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:
 (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.
 
 
 [4]
 We note, however, that Supreme Court caselaw on this point has not been a model of clarity. In Gardner, supra, for example, the Supreme Court began its analysis of the appealability of the order denying class certification by declaring that the order did not have any irreparable effect, but then proceeded to explain why the order did not touch on the substantive merits of the claim. 437 U.S. at 480-81, 98 S.Ct. at 2453, quoted in Carson, supra, at 86, 101 S.Ct. at 997. Nonetheless, Carson, as well as Baltimore Contractors, Inc. v. Bodinger, 348 U.S. 176, 75 S.Ct. 249, 99 L.Ed. 233 (1955), clearly hold that the litigant must show serious, perhaps irreparable, consequences before being entitled to appellate review of such an order under Sec. 1292(a)(1). We think that Gardner, while somewhat confusing, is reconcilable with the other cases in that the absence of an order in Gardner denying an injunction on its merits abrogated any need to find irreparable consequences
 
 
 [5]
 Appellant's Reply Brief at 7
 
 
 [6]
 Although Sec. 1292(a)(1) allows the interlocutory appeal of both permanent and preliminary injunctions, Overton v. City of Austin, 748 F.2d 941 (5th Cir.1984), it is well recognized that a difference exists between the two types of injunctions with respect to the application of Sec. 1292(a)(1). In Commodity Futures Trading Comm'n, for example, we noted:
 Some commentators have written that Sec. 1292(a)(1) is concerned primarily with interlocutory orders that grant or refuse preliminary injunctive relief, see Note, The Limits of Section 1292(a)(1) Redefined?: Appealability of the Class Determination as an Order "Refusing an Injunction", 9 Tol.L.Rev. 488, 492 (1978), because Sec. 1292(a) is "primarily invoked where delay in appellate review will work an injustice," id. at 492. Interlocutory grants of permanent injunctive relief are also appealable because, when an injunction has been granted by an order that takes immediate effect, irreparable damage may be inflicted. 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice and Procedure Sec. 3924, at 69 (1977). An interlocutory order refusing a permanent injunction, in contrast "usually carries a lesser threat of irreparable harm since full injunctive relief may be granted on appeal," Note, supra, at 494. The Supreme Court, however, has stated without explanation that Sec. 1292(a)(1) may "at times embrace denials of permanent injunctions." Switzerland Cheese Ass'n v. E. Horne's Market, Inc., 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23, 23 (1966).
 664 F.2d at 1319 n. 4 (emphasis in original). For additional commentary on the differences between preliminary and permanent injunctions, as well as between interlocutory orders granting and denying a permanent injunction, see Shirey v. Bensalem Township, supra, at 476; Plymouth County Nuclear Information Committee v. Boston Edison Co., 655 F.2d 15, 18 (1st Cir.1981); Roberts v. St. Regis Paper Co., 653 F.2d 166, 170 (5th Cir.1981); Chappell Co. v. Frankel, 367 F.2d 197 (2d Cir.1966) (en banc); Note, Appealability in the Federal Courts, 75 Harv.L.Rev. 351, 369-70 (1961); Recent Decision, 48 Geo.Wash.L.Rev. 456, 470-72 (1980).
 
 
 [7]
 The Supreme Court also found that, unless the consent decree was immediately appealable, the petitioners would lose their opportunity to settle their case on negotiated terms and would thereby suffer a "serious, perhaps irreparable, consequence." 450 U.S. at 86, 101 S.Ct. at 997
 
 
 [8]
 For similar reasons, the instant case is distinguishable from cases in which the district court as an interlocutory matter passes on the merits of both the factual basis of the complaint and the relief sought. In those cases, unless interlocutory review is available, final relief, if warranted, would often have to wait until a new trial is held on remand after an appeal from final judgment. The need for a new trial to resolve the factual disputes would necessarily result in a delay in obtaining injunctive relief caused directly by the delay in reviewing the court's order. See, e.g., McNally v. Pulitzer Publishing Co., 532 F.2d 69, 73 (8th Cir.), cert. denied, 429 U.S. 855, 97 S.Ct. 150, 50 L.Ed.2d 131 (1976)
 
 
 [9]
 Shanks and McKinley also contend on appeal that the order denying class certification alternatively falls within the collateral order exception of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). We reject this argument out of hand. One of the requirements of the Cohen collateral order exception is that the order must resolve an important issue completely separate from the merits of the action. United States v. Garner, supra, at 287; Gibbs v. Paluk, 742 F.2d 181, 183 (5th Cir.1984). As the Supreme Court noted in City of Los Angeles v. Lyons, supra, however, "case or controversy considerations 'obviously shade into those determining whether the complaint states a sound basis for equitable relief.' " 461 U.S. at 103, 103 S.Ct. at 1666 (quoting O'Shea v. Littleton, 414 U.S. 488, 499, 94 S.Ct. 669, 677, 38 L.Ed.2d 674 (1974)). Any examination of the standing of Shanks and McKinley to seek equitable relief would quite clearly involve considerations that are emeshed in the legal issues surrounding their cause of action. See Coopers & Lybrand v. Livesay, 437 U.S. 463, 469, 98 S.Ct. 2454, 2458, 57 L.Ed.2d 351 (1978)