869 F.2d 1494
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Madalyn and Donald SICKAFOOSE, Defendants-Appellants
 No. 88-3260.
 United States Court of Appeals, Sixth Circuit.
 March 14, 1989.
 
 Before ENGEL, Chief Judge and KRUPANSKY and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 The Sickafooses appeal the district court's grant of summary judgment ordering them to remove various improvements on two tracts of their land that are burdened by a government flood easement. For the reasons that follow, we reverse.
 
 
 2
 * On February 29, 1940, the Muskingum Watershed Conservancy District bought a flood easement over Tract No. BOS-202 in Stark County, Ohio for $112. This easement was to be part of the flood plan of the newly constructed Bolivar Dam. The exact terms of the easement are as follows:
 
 
 3
 Said easement being the right to back water over said tract by the erection and operation of the Bolivar Dam and reservoir as provided in the Official Plan of said District, up to elevation 962 feet above sea level, which is the spillway elevation of said dam and reservoir, together with the right of the District to require the removal of all existing buildings located on said real estate used for dwelling purposes and having a first floor elevation five feet or more below said spillway elevation, and the right to require the removal of all existing buildings located on said real estate used for other than dwelling purposes and having a first floor elevation ten feet or more below said spillway elevation, and with the express understanding that no new buildings shall be built below said spillway elevation except by permission of the District and also the right to enter that part of the property that lies below said spillway elevation for the purpose of removing or destroying drift.
 
 
 4
 The Muskingum Watershed Conservancy District made an assignment of the flood easement to the appellee United States on April 14, 1941.
 
 
 5
 The United States then acquired a flood easement over Tract No. BOS-48-D in Stark County, Ohio, also pursuant to the flood plan of the Bolivar Dam. The exact terms of that easement are as follows:
 
 
 6
 TO HAVE AND TO HOLD unto the UNITED STATES OF AMERICA, the grantee, and its assigns forever, the perpetual easement and right to flood said land, together with the right of entry thereon and the right to remove therefrom the timber and other natural growth and any other obstructions, growths, accumulations, brush, trash, filth and any other thing which in any way interferes or may interfere with the exercise of the rights granted hereunder. The grantor, however, shall have the right to remove timber, buildings and structures now located upon said land and to use said land all as may be done without interfering with the rights and privileges herein granted, provided, however, that no improvements, structures, or obstructions of any kind shall be constructed or placed upon or within said easement area without a prior written consent and approval of the District Engineer of the United States Engineer Department at Large in charge of the locality.
 
 
 7
 At the time that the flood easement was acquired by the United States, the contour of Tract No. BOS-48-D was flat with a slight slope and the tract was tillable.
 
 
 8
 The Sickafooses acquired tract No. BOS-202 in 1942, after it had already been burdened by the flood easement now in the possession of the United States. In 1947, they constructed an airport, including a large airplane hangar, on their property. A garage was constructed in 1957, and oil storage tanks were placed on the property in 1968. At all times before and after the construction of the airport and related facilities, the Sickafooses have received necessary permits and approvals from the Civil Aeronautics Board, the Federal Aviation Administration (FAA), and the Ohio Division of Aviation. The FAA inspects the airport annually, and the airport has operated continuously since its construction. All of the airport facilities are located above the line ten feet below the spillway elevation or at 952 feet above sea level, and thus would be allowed to remain if built before the granting of the easement.
 
 
 9
 The Sickafooses purchased Tract No. BOS-48-D sometime after 1958. When the Sickafooses purchased this tract, the contour of the land no longer was tillable as there was a large hole resulting from strip mining that had taken place on the tract from 1947 through 1958. Since the purchase of this tract, the Sickafooses have been using various fill materials to fill in the hole which was created by the excavating and mining operations.
 
 
 10
 During the past forty-five years the Bolivar Dam has never backed up water closer than one and one half miles away from the Sickafoose's property. However, by letter dated June 9, 1978, the United States Army Corps of Engineers requested that the Sickafooses remove their airport facilities from Tract BOS-202, and the fill material from Tract BOS-48-D, because they claimed that the easements forbade the placement of these objects at their present location. The Sickafooses and the United States were unable to reach an agreement concerning the disposition of the objects present on these two tracts of land.
 
 
 11
 On October 9, 1986, the United States filed a complaint for injunctive relief against the defendants-appellants, Donald C. Sickafoose and Madalyn R. Sickafoose, and twelve other defendants. Specifically, the United States sought an injunction requiring the defendants to remove structures and other alleged obstructions from defendants' real estate because of the rights granted by the flood easements.
 
 
 12
 The district court held a hearing on cross-motions for summary judgment, and issued its Opinion on February 19, 1988, granting the motion of the United States for summary judgment and denying the Sickafooses' motion. The Sickafooses were enjoined to remove all structures and other obstructions which they had placed on the land burdened by the flood easements below an elevation of 962 feet mean sea level. Further, the Sickafooses were permanently enjoined from the future placement of structures and other obstructions on their property below an elevation of 962 feet mean sea level without the approval of the District Engineer of the U.S. Army Corps of Engineers.
 
 
 13
 The Sickafooses filed a timely notice of appeal with this court, and the district court suspended the injunction pending appeal. Appellants claim that there were genuine issues of disputed fact concerning the construction of the easement language. Specifically, the appellants claim that the fill material placed on Tract BOS-48-D only brings the land back to its original contour at the time the easement was granted and that therefore permission was not required for the fill placement; and that the approval of the airport facilities on Tract BOS-202 by the FAA and the subsequent inaction by all other authorities including the District Engineer constituted permission for the construction of the facilities.
 
 
 14
 Alternatively, appellants claim that the improvements on the land are de minimis or not "obstructions", that the suit is barred by laches, or that the United States is equitably estopped from enforcing these removal rights after appellants had made improvements on the land over a long period of time without objection from the United States. We consider these claims below.
 
 II
 
 15
 When reviewing the district court's grant of summary judgment, this court must determine if there is any genuine issue of disputed material fact such that a jury could return a verdict for the nonmoving party, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). To obtain permanent equitable relief a plaintiff need only show that "there exists some cognizable danger of recurrent violation." Shanks v. City of Dallas, Texas, 752 F.2d 1092, 1096 (5th Cir.1985). Appellants contend that there were questions of material fact or misinterpretations of law as to whether there exists some cognizable danger of a recurrent violation of any rights possessed by the United States. We consider these contentions with respect to each parcel of land.
 
 Tract BOS-48-D
 
 16
 Appellants claim that farming, tilling, mining of land, and land reclamation do not constitute an "improvement, structure, or obstruction," as forbidden by the easement for Tract BOS-48-D. Specifically, appellants contend that they should be allowed to continue placing fill material in the land that was strip mined as they are only returning it to its original contour for farming at the time the easements were executed.
 
 
 17
 Ohio law requires that the intent of the parties at the time easements were made govern the construction of easements. Siferd v. Stambor, 214 N.E.2d 106 (Ohio App.1966). Therefore, this court is to determine whether the original parties considered putting the land back in its original shape as an obstruction or not. Appellees cite U.S. v. Fisher-Otis Company, Inc., 496 F.2d 1146, 1152 (10th Cir.1974), for the proposition that fill material is an obstruction to flood rights. However, in that case, the fill material raised the elevation of the land, effectively changing the volume of water that could be contained by the land. In this case, the Sickafooses claim that they are simply putting the land back in its original form, allowing the same amount of storage as originally bargained for, and are thus not taking anything from the government.
 
 
 18
 The appellee contends that the intent of the parties that fill cannot be placed to return land to its original contours is so obvious that summary judgment was appropriate. We disagree. The agreement apparently contemplates continued agricultural use of the land by the grantor, and the Sickafooses allege that they are attempting to bring the land back to that use. Construing all facts favorably for the plaintiff makes this a genuine issue of disputed material fact that should have been presented to a fact finder and not dismissed on summary judgment.[1]
 
 Tract BOS-202
 
 19
 Regarding Tract BOS-202, appellants contend that the intent of the parties as to what constitutes permission in the easement was not clear enough for the district court to grant summary judgment.
 
 
 20
 The district court held that summary judgment was appropriate with respect to Tract BOS-202 because the "terms of the easement unambiguously state that the approval of the District Engineer of the Engineer Department at large is necessary before defendants can make any improvements, construct buildings, or place obstructions on the property in question ... [I]t was ... clearly the duty of the defendants to obtain authorized approval of the District Engineer before building an airport on their land."
 
 
 21
 However, the district court incorrectly quoted the language regarding permission in the easement for Tract BOS-202. The original easement later purchased by the government requires that "no new buildings shall be built ... except by permission of the District." The "district" referred to in this easement is the Muskingum Watershed District, the entity that originally purchased the flood rights. The district court made no inquiries concerning the definition of "permission" understood by the original parties to the easement, or whether the ability to grant permission automatically transferred from the Muskingum District to the District Engineer with the transferral of the easement rights. Therefore, it is difficult for this court to ascertain the materiality of facts regarding any "permission" that may have been granted in the present situation. We therefore remand to the district court for a full hearing and finding of facts regarding this issue.[2]
 
 
 22
 The decision of the district court is REVERSED and the case is REMANDED for disposition consistent with this opinion.
 
 
 
 [1]
 We are not deciding whether or not there is a genuine issue of fact as to the obstructive effect of any particular type of fill material that may be placed upon Tract BOS-48-D. That issue was not decided below, and we do not address it here
 
 
 [2]
 The appellants also claim that there was a genuine issue of fact as to whether the hangar, oil storage tanks, and other airport facilities were in fact "obstructions, improvements or buildings" and as to whether they were otherwise allowed because they were all above ten feet below the flood line. Since we have already determined that the case will be remanded on other grounds, we do not decide this issue