**UNITED FARMERS AGENTS ASSOCIATION, INC.**

v.

**FARMERS INSURANCE EXCHANGE, et al.**

**Thomas J. VINSON, et al.**

v.

**FARMERS INSURANCE EXCHANGE, et al.**

**Nos. A–92–CA–373, A–92–CA–374.**

United States District Court, W.D. Texas, Austin Division.

April 21, 1995.

Bogdan Rentea, Rentea & Assoc., Austin, TX, for United Farmers Agents Ass'n Inc., Thomas J. Vinson, Robert D. Moon.

James W. Cannon, Jr., Eric W. Pinker, Akin, Gump, Strauss, Hauer & Feld, Austin, TX, Richard C. Levin, Akin, Gump, Strauss, Hauer & Feld, Dallas, TX, David E. Dunham, Taylor & Dunham, Austin, TX, Don T. Hibner, Pierce T. Selwood, Dani Young Merryman, Sheppard, Mullin, Richter & Hampton, Los Angeles, CA, for Farmers Ins. Exchange, Fire Ins. Exchange, Truck Ins. Exchange, Mid–Century Ins. Co., Farmer's New World Life Ins. Co.

## ORDER ON REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

BUNTON, Senior District Judge.

**BEFORE THIS COURT,** in the above-captioned cause of action, is the Report and Recommendation of United States Magistrate Judge Stephen H. Capelle, filed April 6, 1995. Magistrate Judge Capelle submits this Report and Recommendation pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of duties to United States Magistrate Judges, as amended, effective February 17, 1995.

This Report and recommendation covers four separate motions for summary judgment filed by Defendants and one motion filed by Plaintiffs. The considered motions are listed as follows: Defendant's Motion for Summary Judgment against Plaintiffs Vinson and Moon, filed November 14, 1994; Defendant's Motion for Summary Judgment against Plaintiff United Farmers Agents, filed November 14, 1994; Defendant's Motion to Dismiss as a Class Action and Deny Certification, filed November 14, 1994; Defendant's Motion for Summary Judgment against Plaintiffs Vinson and Moon on Claims Barred by the Statue of Limitations, filed November 14, 1994; and Plaintiffs Vinson and Moon's Motion to Certify a Plaintiffs Class under Fed.R.Civ.P. 23(b)(3), filed November 14, 1994.

The Report and Recommendation of Magistrate Judge Capelle shows a thorough research into the record. This report fairly and accurately analyzes and disposes of all the pertinent issues in this case. The Court is therefore of the opinion the Magistrate Judge's Report and Recommendation should be Adopted in its entirety and Defendant's Motions for Summary Judgment and to Dis-

miss as a Class Action and Denial of Class certification should be granted and Plaintiffs' Motion for Class Certification should be denied. Accordingly,

**IT IS ORDERED** the Report and Recommendation of United States Magistrate Judge Stephen H. Capelle, filed April 6, 1995, in the above-captioned cause of action, is in all matters **APPROVED AND ADOPTED.**

**IT IS FURTHER ORDERED** the above-captioned cause of action is to be **DISMISSED WITH PREJUDICE.**

**IT IS FINALLY ORDERED** the costs of the above-cause of action are to be assessed to the Plaintiffs in this matter.

### REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

CAPELLE, United States Magistrate Judge.

The Magistrate Court submits this Report and Recommendation to the District Court pursuant to 28 U.S.C. § 636(b) and Rule 1(c) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrates Judges, as amended, effective February 17, 1995.

This Report and Recommendation covers four (4) separate motions for summary judgment filed by Defendants and one motion filed by Plaintiffs.

The following documents were considered by the Court:

1. Documents related to Defendants' request for summary judgment against Vinson and Moon:

Defendants' Motion for Summary Judgment against Plaintiffs Vinson and Moon filed November 14, 1994 (Doc. # 204); Defendants' Memorandum of Law in Support of Summary Judgment against Plaintiffs Vinson and Moon filed November 14, 1994 (Doc. # 205); Defendants' Exhibits filed November 14, 1994 (Docs. # 212–213); Plaintiffs Vinson and Moon's Response to Defendants' Motion for Summary Judgment filed December 1, 1994 (Doc. # 225);

and Defendants' Reply to Plaintiffs Vinson and Moon's Response filed December 16, 1994.

2. Documents related to Defendants' request for summary judgment against United Farmers Agents Association, Inc.:

Defendants' Motion for Summary Judgment against Plaintiff United Farmers Agents filed November 14, 1994 (Doc. # 210); Defendants' Memorandum in Support of Summary Judgment against Plaintiff United Farmers Agents filed November 14, 1994 (Doc. # 211); Defendants' Exhibits filed November 14, 1994 (Docs. # 212–213); Plaintiffs' Response to Defendants' Motion for Summary Judgment filed December 1, 1994; and Defendants' Supplemental Memorandum in Support of Summary Judgment filed January 6, 1994 (Doc. # 236).

3. Documents related to Defendants' request for dismissal of class certification under Fed.R.Civ.P. 23(b)(2):

Motion by Defendants to Dismiss as a Class Action and Deny Certification filed November 14, 1994 (Doc. # 206), Memorandum in Support of Motion by Defendants to Dismiss as a Class Action and to Deny Certification filed November 14, 1994 (Doc. # 207); Defendants' Exhibits filed November 14, 1994 (Docs. # 212–213); Plaintiffs' Response to Defendants' Motion to Dismiss as a Class Action and Deny Certification filed December 1, 1994 (Doc. #·226); and Defendants' Reply to Plaintiffs' Response filed December 16, 1994 (Doc. # 233).

4. Documents related to Plaintiffs' request for class certification under Fed.R.Civ.P. 23(b)(3):

Motion by Plaintiffs Vinson and Moon to Certify a Plaintiffs Class under Fed. R.Civ.P. 23(b)(3) filed November 14, 1994 (Doc. # 203) and Defendants' Response to Plaintiffs Vinson and Moon's Motion to Certify a Plaintiffs Class filed November 28, 1994 (Doc. # 224).

5. Documents related to Defendants' request for partial summary judgment against Vinson and Moon based on the statute of limitations:

Defendants' Motion for Summary Judgment against Plaintiffs Vinson and Moon on Claims Barred by the Statute of Limitations filed November 14, 1994 (Doc. # 208); Defendants' Memorandum of Law in Support of Summary Judgment against Plaintiffs Vinson and Moon on Claims Barred by the Statute of Limitations (Doc. # 209); Defendants' Exhibits filed November 14, 1994 (Docs. # 212–213); Plaintiffs' Response filed December 1, 1995 (Doc. # 227); and Defendants' Reply to Plaintiffs Vinson and Moon's Response filed December 16, 1994 (Doc. # 232).

The Court additionally reviewed all of the exhibits proffered by the parties as well as reviewed the entire case file, including pleadings and previous orders issued by United States District Judge James R. Nowlin.

## I.

### PLAINTIFFS' ALLEGATIONS

A. *Plaintiffs Vinson and Moon.*

Plaintiffs, Thomas J. Vinson and Robert D. Moon, filed a First Amended Original Complaint (Doc. # 13) on September 15, 1992, seeking to recover treble damages under section four of the Clayton Act (15 U.S.C. § 15) for the named Plaintiffs, as well as all others similarly situated, and also seeking injunctive relief under section sixteen of the Clayton Act (15 U.S.C. § 26) as a direct result of alleged violations by the Defendants (Farmers) of section one of the Sherman Act (15 U.S.C. § 1) and section three of the Clayton Act (15 U.S.C. § 14).

Thomas J. Vinson is a Farmers Insurance agent who entered into a Computer Installment Sales and Security Agreement and an Agency Network Service Agreement with Farmers. Robert D. Moon is a Farmers Insurance agent who did *not* enter into a Computer Installment Sales and Security Agreement nor an Agency Network Service Agreement with Farmers. The two Plaintiffs allege that they unwillingly entered into a conspiracy with Farmers and with other conspirators unnamed and with the Farmers Insurance district managers, the Farmers Insurance division agency managers, Farmers Insurance regional managers, Farmers

Insurance regional agency managers, and Farmers Insurance regional sales managers and International Business Machines (IBM) to violate the Plaintiffs' rights as listed above.

Both Vinson and Moon bring class actions requesting relief for all persons similarly situated as the Plaintiffs: In Plaintiff Vinson's case, all those who entered into Computer Installment Sales and Security Agreements with Farmers Insurance and in Plaintiff Moon's case, all those who did not. Plaintiffs allege that Farmers has developed and maintains a vast amount of ratings, marketing, and policyholder information, most of which is not readily available except when an agent is online with the Farmers agency network system, which is a computer mainframe located in Los Angeles, California (¶ 19 of the Vinson and Moon First Amended Complaint).

The Plaintiffs allege that Farmers, beginning in 1981 and continuing, is restraining trade and commerce by conditioning access to the Farmers agency network systems (FANS) on the purchase directly and only from Farmers of IBM computer equipment at prices and conditions solely dictated by Farmers. They also allege that it is technically possible to obtain access to the FANS through other types of computer equipment. Plaintiffs allege that access to FANS greatly enhances the ability and efficiency of agents and therefore the profitability of agents. Plaintiffs allege coercion in the requirement to purchase the IBM computer systems and IBM service contracts to obtain access to FANS and the attempted coercion of those without computer access to obtain computer access through Farmers. Plaintiffs also allege that the conspiracy was furthered by the requirement to execute the Computer Installment Sales and Security Agreement and the requirement to execute an Agency Network Service Agreement and to pay a monthly computer service fee in order to have access to FANS.

Plaintiff Vinson alleges on behalf of his class that the class members were coerced into the purchase of the IBM computer system through threats of termination of their Agency Appointment Agreements (¶ 31 of First Amended Complaint). Plaintiff Moon

alleges for his class that there was coercion by the Defendants in an attempt to force the class members to purchase a computer system which they do not desire to purchase.

Plaintiffs allege that the conduct of the Defendants requiring a Computer Installment Sales Agreement and an Agency Network Service Agreement to obtain access to FANS is an illegal tying agreement under section three of the Clayton Act (15 U.S.C. § 14) (Vinson and Moon First Amended Complaint ¶ 34). The two Plaintiffs seek monetary damages for their respective classes in the amount of one hundred million dollars ($100,000,000) each. They also request temporary and permanent injunctions enjoining Farmers and the other co-conspirators from requiring the purchase of IBM computer equipment from Farmers in order to have access to FANS and for attorneys fees.

B. *Plaintiff United Farmers Agents Association.*

Plaintiff United Farmers Agents Association, Inc. (UFAA) also brings a complaint [consolidated with the Vinson/Moon complaint] against the same Defendants seeking a declaratory judgment concerning the rights of Plaintiff UFAA's members under the standardized agent appointment agreement entered into between each agent and Farmers. (UFAA Second Amended Original Complaint, Doc. # 162). The UFAA Complaint alleges that Farmers has violated section one of the Sherman Act (15 U.S.C. § 1) in that it has coerced and attempted to coerce the Plaintiff UFAA's members into purchasing IBM computer equipment from Farmers in order to access the Farmers Agency Network System (FANS). Plaintiff UFAA alleges that the requirement to purchase the computer equipment from Farmers/IBM and thereby obtain access and use of the FANS is an illegal tying arrangement. UFAA also alleges that Farmers has committed a violation of section three of the Clayton Act (15 U.S.C. § 14) in that the Computer Installment Sales Agreement and the Agency Network Service Agreement which UFAA members who purchase equipment from Farmers are forced to enter into is also an illegal tying

arrangement in restraint of trade and commerce.

UFAA makes a number of supplemental claims, one of which is that Farmers has threatened and is threatening to terminate the Agency Appointment Agreement of all agents who do not purchase computer equipment from Farmers. Additionally, UFAA contends that Farmers is attempting to establish and enforce production standards and levels which are not part of the agency agreement and which are "virtually impossible to satisfy unless the agent has access to the agency network system." UFAA further contends that access to FANS is only possible through the acquisition of IBM computer equipment purchased from Farmers. UFAA also complains about an alleged unilateral amendment of the Agency Appointment Agreement because Farmers adopted in January of 1992 "deteriorating agency rehabilitation guidelines" and implemented a "program of limited underwriting authority."

UFAA alleges that the Farmers' requirements that the Plaintiff's members purchase computer equipment to obtain access to FANS constitutes a breach of the covenant of good faith and fair dealing with respect to the Agency Appointment Agreement. UFAA also sues for declaratory judgment and injunctions as well as a declaration by the Court that the conduct of Farmers violates the covenant of good faith and fair dealing and for attorneys' fees.

## II.

### *BACKGROUND*

Farmers Insurance is a group of five insurance companies selling various lines of insurance policies, including life, homeowners, automobile, and commercial liability policies. Farmers has approximately 14,000 independent contractor agents operating in twenty-nine states. *See* Defense Exhibit 2 (Braddock affidavit ¶ 4). The basic contract defining the rights and obligations between Farmers and its agents is the Agent Appointment Agreement. Farmers is obligated under the Appointment Agreement to provide policyholder information to its agents. *See*

Defense Exhibit 1 (Butler affidavit, Agent Appointment Agreement of Thomas Vinson).

In 1981, Farmers began the process of creating a dual system of records for its policyholder information. Paper and manual records were converted to computer records and agents (through the use of dumb terminals) were permitted online access to policies and rating information contained in what is now called the Farmers Agency Network System (FANS). The information available online from FANS was then and still is also available on paper through written manuals, publications, and policy records. *See* Plaintiffs' Exhibit 114 (Walker affidavit ¶ 13); *see also* Defense Exhibit 1 (Butler affidavit ¶ 5); Defense Exhibit 2 (Braddock affidavit ¶ 9).

Beginning in 1985, when an agent accessed FANS, he was able to make changes in certain policyholder data contained in FANS. Over the years, additional services have been added to FANS. Despite the growth of information and services available via FANS, the agents have always had the ability to access the same information via the telephone, fax machine, and mail without the necessity of computer linkage. *See* Defense Exhibit 2 (Braddock affidavit). Obviously, by using a computer, an agent gains speed of access to policyholder information.

If the agent desired electronic access to the FANS, he was required to accomplish that access on an IBM computer specially configured for the FANS. *See* Defense Exhibit 2 (Braddock affidavit). An agent was not prohibited from using another agent's computer to access the electronic information if he chose not to purchase his own computer from Farmers.

Thousands of Farmers agents have not purchased an IBM computer from Farmers. Farmers does not require that its agents purchase a computer from Farmers to have access to policyholder information. However, until 1993, the only approved online access to the policyholder information was via a specially configured IBM System purchased from Farmers. *See* Defense Exhibit 3 (Wong affidavit). Agents are now permitted to purchase outside third-party vendor computers to access FANS.

To encourage the agents to use FANS, Farmers offers a small payment (presently 40 cents) to each agent for each time the agent electronically accesses policyholder information on the FANS. *See* Defense Exhibit 3 (Wong affidavit). It is not necessary that the agent own the computer to receive this payment, only that he input his agent identification number when using an authorized computer. Approximately half of the 14,000 Farmers agents have purchased or leased IBM computers from Farmers. Over ninety percent (90%) of Farmers agents have electronic direct access to the FANS through either their own computers or computers belonging to other agents. As such, ninety percent of Farmers agents have at some time received the small bonus payment for accessing policyholder information on FANS. *See* Defense Exhibit 3 (Wong affidavit); Defense Exhibit 4 (Larsen affidavit).

Electronic access to the policyholder information in Farmers is not sold to any outside individual or firm: it is only offered to Farmers agents. Only Farmers agents and employees can access FANS. Farmers agents do not pay for access to the policyholder information but must use an approved computer to *electronically* access the policyholder information.

Plaintiff Vinson purchased his first IBM computer from Farmers in 1983 or 1984 and upgraded to a different system in December, 1987. (Vinson deposition p. 84–85, 225). Plaintiff Moon has never purchased an IBM computer from Farmers. Plaintiff Moon has used a personal computer in his agency since 1986. (Moon deposition p. 59–61).

### III.

### *PROCEDURAL HISTORY*

On June 18, 1992, two cases were filed, one by Vinson and Moon, the other by United Farmers Agents Association (UFAA). The cases were consolidated on June 30, 1992 by order of United States District Judge James R. Nowlin. After proceeding in discovery for an extended period of time, a hearing was held on December 15, 1993 before United States District Judge James R. Nowlin on all the Plaintiffs' Motion to Certify the Action as

a Class Action. Subsequent to that hearing, on January 4, 1994, Judge Nowlin entered an order granting in part and denying in part Plaintiffs' motion (Doc. # 115). The order discusses the evidence presented and the applicable requirements of Fed.R.Civ.P. 23. Its operative language states at page 7:

> This Court finds that a class action should be certified as a plaintiff class under Rule 23(b)(1). The certified class is composed of all the individual persons who were independent insurance agents for Farmers Companies during the time period in which the alleged illegal tying practice occurred for the process of determining whether there was an illegal tying arrangement. This Court may modify this class into subclasses with respect to the possible Moon class and the possible Vinson class, but this Court declines to certify such classes at this time. This Court's initial concern is whether or not the alleged conduct of the defendants was in violation of any law. If any such violation is shown to have occurred, then this Court may certify a class or classes with respect to damages under subdivision (b)(3) ... page 7.

> The Court continues at page 9: This Court may modify this class as circumstances warrant.

On January 13, 1995, this consolidated action was transferred to the trial docket of the Honorable Lucius D. Bunton III and the referral of pending and future discovery motions as well as other dispositive and non-dispositive motions to the undersigned was continued.

## IV.

### *DISCUSSION*

A. *Standard of Review under Fed. R.Civ.P. 56(c).*

Rule 56(c) of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show the moving party to be entitled to summary judgment as a matter of law." Rule 56(e) states: "When a motion for summary judgment is made and supported as provided in this rule an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing there is a genuine issue for trial."

■ Both movants and non-movants bear burdens of proof in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The movant with the burden of proof at trial must establish every essential element of its claim or affirmative defense; however, if the issue is one on which the movant does not bear the burden of proof at trial, summary judgment is warranted if the non-movant fails to make a sufficient showing to establish the existence of each element essential to its case. *Id.* at 322–23, 106 S.Ct. at 2552. In so doing, the moving party without the burden of proof need only point to the absence of evidence on an essential element of the non-movant's claims or affirmative defenses. *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2554. At that point, the burden shifts to the non-moving party to produce evidence in support of its claims or affirmative defenses by affidavits or by "depositions, answers to interrogatories and admissions on file, designating specific facts showing that there is a genuine issue for trial." *Id.* at 324, 106 S.Ct. at 2553. The non-moving party must produce "specific facts" showing a genuine issue for trial, not mere general allegations. Fed.R.Civ.P. 56(e); *Tubacex v. M/V Risan*, 45 F.3d 951, 954 (5th Cir.1995). The non-movant has failed to meet this standard if its response merely shows that "there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). If no such evidence is produced, "[t]he moving party is entitled to a judgment as a matter of law." *Id.* at 323, 106 S.Ct. at 2552.

In deciding whether to grant summary judgment, the Court should view the evidence in the light most favorable to the party opposing summary judgment and indulge all reasonable inferences in favor of that party. *Burgos v. Southwestern Bell Telephone Co.*, 20 F.3d 633, 635 (5th Cir.1994); *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263

(5th Cir.1991), *cert. denied,* 502 U.S. 1059, 112 S.Ct. 936, 117 L.Ed.2d 107 (1992).

The Court must substantively evaluate the evidence offered by the moving and non-moving parties to determine whether the evidence raises a "material" fact question which is "genuine." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact question is "material" if it involves "disputes over facts that might effect the outcome of the suit under the governing law." *Id.* at 248, 106 S.Ct. at 2510; *Burgos,* 20 F.3d at 635.

█ The material fact dispute must be such that a reasonable jury could return a verdict for the nonmoving party. *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. at 2510. The Fifth Circuit has concluded "[t]he standard of review is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the non-moving party based upon the evidence before the court." *James v. Sadler,* 909 F.2d 834, 837 (5th Cir.1990) (citing *Matsushita,* 475 U.S. at 586, 106 S.Ct. at 1356). To the extent facts are undisputed, a Court may resolve the case as a matter of law. *Blackwell v. Barton,* 34 F.3d 298, 301 (5th Cir.1994).

### B. *Summary judgment against Vinson and Moon.*

#### 1. Defendants' allegations.

The Defendants allege primarily that Farmers has not imposed a "tying arrangement" on its agents. This general allegation is divided into a number of specific allegations which will be reviewed in turn: 1) Farmers has not sold two separate products pursuant to a tying arrangement; 2) Farmers has not forced its agents to purchase computer equipment to access its policy information; 3) Farmers does not possess sufficient economic power to compel the purchase of any alleged tied product; 4) there has not been nor could there be any anti-competitive effect in the alleged tied product market; 5) Plaintiffs have not suffered any antitrust injury; and 6) there is no genuine issue of material fact as to the Plaintiffs' conspiracy allegations.

Defendants assert that in order to establish a tying relationship and therefore a tying violation, Plaintiffs must show that two separate products were tied together by Farmers and that Plaintiffs were forced or coerced to buy the alleged tied product when they did not wish to do so. Absent two separate products, there cannot be a tying violation. The Defendants allege that the Plaintiffs contend that *electronic* access to Farmers' policy information is the "tying" product and the requirement that certain IBM computer products be purchased in order to have electronic access is the "tied" product. Thus, Defendant contend that the Plaintiffs lose at the initial definitional stage in that *electronic* access to Farmers policy information is by definition not a product. Defendants point out that has never been an opportunity for any person or agent of Farmers to buy or offer to buy access to Farmers' policyholder information and that there is no evidence Farmers ever sold or offered to sell access to its policyholder information. The Defendants assert that access to the policyholder information is a contractual obligation provided by Farmers to its agents pursuant to the Agency Appointment Agreement and that said access is provided to the agents at no charge and no price. Therefore, there is no "product" in *electronic access* to the Farmers policyholder information and no antitrust violation.

Farmers alleges that there has been no evidence produced to support Plaintiffs' allegations in paragraphs twenty, twenty-nine and thirty-two of Vinson and Moon's First Amended Original Complaint that Plaintiffs were forced and coerced to purchase electronic equipment from Farmers in order to gain access to policyholder information. Farmers contends that the evidence produced to support this motion indicates that no agent has ever been forced to purchase any computer equipment, much less Farmers computer equipment, in order to access policyholder information: the purchase of Farmers computer equipment was required only if the agent wished to have *electronic* access to Farmers policyholder information and was unable to share another agent's computer.

Farmers also contends that, even assuming the policyholder information provided by Farmers to its agents pursuant to the agency appointment agreement is a product, Plaintiffs must show that Farmers possesses market power sufficient to force the Plaintiffs to make a buying decision against their will. The focus of a tying violation is that the seller of a product attempts to transfer economic power from one product to another: because the seller has economic power in the market for the tying product, it can force the purchaser to purchase an unwanted tied product in order to obtain the desired product. If the seller lacks power in the tying product market to produce a restraint in the second "tied" market, there can be no tie and hence no violation of the antitrust laws.

Because one of the primary questions is whether the illegal tie transfers power from the first market to foreclose competition in the second market, Farmers alleges that the Plaintiffs must show an anti-competitive effect in the second market for the tied product. Farmers asserts that because there is no anti-competitive effect in the second tied market, Farmers did not violate antitrust laws.

Farmers alleges that because it has no interest in the computer equipment market and, even if it did, Farmers was not a competitive factor in that market, the Plaintiffs cannot show any anti-competitive effect or resulting damage. Farmers points out that under section four of the Clayton Act (15 U.S.C. § 15) a plaintiff must prove "fact of damage" or "proof of impact" as an essential element of their case or their claims necessarily fail.

Finally, Farmers alleges that there has been no showing of any facts to support the allegations in paragraphs seventeen of the First Amended Original Complaint of Vinson and Moon that the Farmers companies and others were involved in a conspiracy. Further, Plaintiffs have engaged in no discovery in that area.

### 2. Plaintiffs' response.

Plaintiffs respond that electronic access to the policyholder information owned by Farmers is indispensable for the operation of an insurance agency and that there can be no dispute that the computer equipment is a product separate from the electronic database. Because Farmers only offered one form of access to its electronic database until recently, and because that one method of access is conditioned on the purchase of a computer, Plaintiffs claim that electronic access to the policyholder information is a tied product and therefore violative of the Clayton Act.

Plaintiffs allege that Farmers unilaterally controls online access to its policyholder information by requiring every agent who requests such access to enter into a written agreement concerning the purchase of a specific IBM computer and service; therefore electronic access is tied to the purchase of the computers. The Plaintiffs continue that Farmers has misconstrued the market where Farmers has absolute power and that the market which this Court should review is "electronic access" to Farmers insurance policies and services. Plaintiffs assert that there is ample evidence to show Farmers possesses market power in the relevant market, which is the online access; therefore, the element of anti-competitive effect is also proved.

Plaintiffs also contend that damage evidence has been presented in the affidavits of Vinson and Moon on behalf of their respective classes. They assert for the Vinson class that products were available on the open market at substantially lower prices than those Farmers required them to purchase. Further, they allege that substantial profits were lost by the Moon class because the members did not have electronic access to the policyholder information.

Plaintiffs have listed themselves as co-conspirators in their First Amended Complaint and therefore they contend that evidence has been presented with regard to the conspiracy between the Farmers insurance companies and the Plaintiffs sufficient to survive summary judgment.

### 3. Analysis.

On December 15, 1993, in an appearance before United States District Judge James R. Nowlin in oral arguments at a class certi-

fication hearing, an attorney for the Plaintiffs stated the following:

> Briefly, your Honor, Farmers agents need a variety of information or data to—before and after they sell insurance policies. And unquestionably, this information or data is vital to them performing their duties as agents.

> Currently, this data is provided by Defendant Farmers in two separate ways, one that we're complaining about and one that we're not complaining about. The one that we're not complaining about is the written data that they provide by way of bulletins, publications, manuals and so forth that contain various information necessary for them to do their job, for example, rating information, policyholder information, and the like.

> Although there's some references in the record with regard to how easy it is to use this information or difficult to use this information, we're not complaining about that portion of the data.

> What we're complaining about is the other manner in which the data is provided by Farmers. And that is through online access to the mainframe which is located in Los Angeles, California, at the headquarters of the Defendants.

> In that mainframe resides all the data that is also available in the written form. But, of course, it's much easier to access. It's a lot ... it's updated a lot quicker and a lot faster, but it can only be accessed by going online with the mainframe. (Defendants' Exhibit 15, excerpts of trial transcript, p. 2 beginning at line 23–p. 3 line 22).[1]

Following the admonitions of the United States Supreme Court in *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510, this Court must evaluate the evidence offered by the moving and non-moving parties to determine whether the evidence raises a "material" fact questions which is "genuine." The statement by the Plaintiffs' attorney at the class certification hearing at least articulates to this Court in a very shorthand fashion what this lawsuit is about. The Court discusses the Defendants' Motion for Summary Judgment against Vinson and Moon in the areas as set out in the Defendants' Motion as follows:

a. *Electronic access is not a "product."*

■ Farmers contends that it has not sold two separate products pursuant to a tying agreement. Every agent who is authorized to sell insurance products provided by Farmers signs an Agency Appointment Agreement. *See* Defense Exhibit 1 (Butler affidavit, ¶ 12, affidavit exhibit "D", Appointment Agreement of Thomas Vinson). At paragraph (3) of this Agency Appointment Agreement, Farmers is required to provide to the agent "company manuals, forms, and policyholder records necessary to carry out the provisions of this agreement." All agents have access to this policyholder information. Farmers provides access in two forms, manually and through electronic access. *See* Defense Exhibit 2 (Braddock affidavit ¶ 9).

Prior to 1981, all access was manual. In 1981, Farmers developed the FANS. At its inception FANS simply provided information; however, since that time, the system has been upgraded to provide access to files and rate-quoting data and the ability to modify the policies themselves. *See* Defense Exhibits 1, 2, and 3 (Butler, Braddock, and Wong affidavits). Plaintiffs in their response do not dispute that the information is available manually as well as electronically. *See* Plaintiffs' Exhibit 114 (Walker affidavit, ¶ 14).

Farmers contends that the electronic access to its policyholder information is not a "product." The issue is whether Farmers sold two separate products. Plaintiffs have made clear in their claims and allegations that they are complaining of the alleged tie only as regarding the electronic access to the information contained in FANS. There is no dispute that agents have other methods than buying a Farmers computer to obtain access to the information contained in FANS: each agent receives manuals and pamphlets, and the agents can also access the information by phone, facsimile, and the mail, and they can

---

**1.** All references are to exhibits attached to motions for summary judgment or responses thereto and are identified by exhibit number and party submitting same.

obtain electronic access through other agents' computers.

*Prima facially,* to have a tie there must be two separate products. *Jefferson Parish* discusses this requirement in great detail: "Not every refusal to sell two products separately can be said to restrain competition." *Jefferson Parish Hosp. Dist. No. 2 v. Hyde,* 466 U.S. 2, 11–12, 104 S.Ct. 1551, 1558, 80 L.Ed.2d 2 (1984). In addition, "not all tying arrangements are illegal." *Breaux Bros. Farms, Inc. v. Teche Sugar Co.,* 21 F.3d 83, 86 (5th Cir.) *cert. denied,* —— U.S. ——, 115 S.Ct. 425, 130 L.Ed.2d 339 (1994).

The undersigned feels that the Plaintiffs have presented no evidence to establish that *electronic access* to the policyholder information in the Farmers mainframe computer is a product. This policyholder information is not sold on the open market, is not sold to consumers in any form or fashion, and is provided only to the independent contractors who choose to become Farmers agents by signing an Agency Appointment Agreement. *See* Defense Exhibit 2 (Braddock affidavit ¶ 9).

The Plaintiffs have attempted to establish that electronic access is itself a product. Electronic access in and of itself does little good to a Farmers agent or anyone else unless something is obtained through that electronic access. The product that is important to the Farmers agents (Plaintiffs) is the information contained in the mainframe computer in California or in the manuals and files provided by Defendant Farmers. There is no open market for the policyholder information and in reality, as pointed out by the Plaintiffs in argument at prior hearings and in depositions, release by Farmers of information contained in the policyholder files would violate a number of privileges owned by the clients themselves. There is no evidence before this Court to show that there is any tying arrangement instituted by Farmers other than the requirement that an agent sign an Agency Appointment Agreement in order to obtain policyholder information. The record is replete with evidence that Farmers Insurance sells insurance, *not* on-line computer services, *not* computers. *See* Defense Exhibit 2 (Braddock affidavit); De-fense Exhibit 3 (Wong affidavit); Defense Exhibit 7 (Weinstein affidavit); and Defense Exhibit 8 (Expert report of Roy Weinstein).

The record before this Court establishes that, in 1981, Farmers began the process of creating a dual system of records. Paper and manual records were converted into computer records and limited access to those computer records was allowed by agents using dumb terminals to access information regarding policyholders and rating information. That information was, and still is, available through written manuals and publications. Thus, from 1981 to the present, agents have always had the ability to access the policyholder information through manuals, phones, fax machines, and mail without the necessity of the use of any computer whatsoever.

Alternatively, agents have the option of accessing the policyholder information through computers, whether by using another agent's computer or by purchasing a computer, under certain guidelines, which has the ability to access the Farmers mainframe. By using a computer, a Farmers agent gains only *speed* of access to the policyholder information. *See* Defense Exhibit 1 (Butler affidavit); Defense Exhibit 2 (Braddock affidavit); and Defense Exhibit 3 (Wong affidavit).

Plaintiffs allege that the electronic access was sold as one product tied to the purchase of IBM computers from Farmers. Electronic access to the policyholder information in Farmers is a "product" not sold to any outside individual or firm, it is only offered to Farmers agents. That access, if indeed it is a product as alleged by Plaintiff, is obtainable only by Farmers agents. Farmers agents never paid for the policyholder information obtained manually or electronically. *See* Defense Exhibit 2 (Braddock affidavit). For all these reasons, electronic access to the information contained in FANS is not a "product" capable of tying IBM computers, and there is no antitrust violation.

b. *The agents are not consumers.*

■ Assuming for purposes of this recommendation that the electronic access is a product, it then becomes necessary to decide whether the agents are consumers. The an-

titrust laws were structured to protect competition, not competitors and to protect the ultimate consumers. *Jefferson Parish,* 466 U.S. at 8, 104 S.Ct. at 1556; *Breaux Bros.,* 21 F.3d at 88–89; *Roy B. Taylor Sales v. Hollymatic Corp.,* 28 F.3d 1379, 1382 (5th Cir. 1994).

Plaintiffs allege that they are consumers of the product of electronic access, but they can only become consumers of that product if they choose of their own volition to become Farmers agents. They must choose to become Farmers agents as opposed to agents of any other insurance company in order to obtain policyholder information from Farmers, in manual or electronic form. No facts presented by either Plaintiffs or Defendants show an outside demand for electronic access. There is no separate product market for electronic access to Farmers policyholder information.

> c. *Farmers has not forced its agents to purchase computer equipment to access its policy information.*

■ In order for an illegal tie to take place, the defendants must use their power to force and coerce the plaintiffs into purchasing an unwanted product in order to obtain a wanted product. No evidence has been shown in any of the affidavits submitted by the Plaintiffs or the Defendants, including the affidavits of Moon and Vinson, that any Farmers agent was required to purchase equipment from Farmers. *See* Defense Exhibit 4 (Larsen affidavit, ¶¶ 24–27); Defense Exhibit 14 (Lewis deposition); Defense Exhibit 9 (Walker deposition p. 78); Defense Exhibit 1 (Butler affidavit).

Specifically, Plaintiff Moon testified in deposition that he was not threatened with termination for not purchasing a computer from Farmers and that he knew of no other agent who had been terminated for not purchasing a computer from Farmers. *See* Defense Exhibit 11 (Moon deposition p. 127 1. 10—p. 128 1. 24). Plaintiff Vinson testified in deposition that he was encouraged by Farmers to purchase a computer from Farmers "to be a good professional agent" but he was not told that he would be fired if he did not purchase one. *See* Defense Exhibit 10 (Vinson deposition, p. 115 1. 11—p. 116 1. 16).

There are approximately 14,000 Farmers agents now doing business in twenty-nine states. Prior to June 18, 1988, 4,769 agents had purchased computer equipment from Farmers and 3,881 agents had not purchased computers from Farmers. *See* Defense Exhibit 1 (Butler affidavit). Currently, 11,400 agents have computer access to Farmers files but only 8,120 have purchased computer equipment. Of the approximately 14,000 Farmers agents nationwide, 13,223 have accessed the FANS either through their own computers or through the computers of other agents. *See* Defense Exhibit 3 (Wong affidavit).

There is no doubt from review of the entire record that Farmers encouraged its agents to have electronic access to its policyholder information through publications, meetings, requests, letters, and advice. This encouragement also took the form of paying agents a supplement of 40 cents for each time they were registered as accessing the mainframe computer. (See Wong affidavit).

■ The Fifth Circuit requires that a plaintiff in a tying case show that the purchaser was actually coerced into purchasing an unwanted product. *Response of Carolina, Inc. v. Leasco Response, Inc.,* 537 F.2d 1307, 1327 (5th Cir.1976).

> Actual coercion is an indispensable element of a tie-in charge. A manufacturer may use strong persuasion, encouragement, or cajolery to the point of obnoxiousness to induce his retailer to buy its full line of products. An antitrust violation occurs only if it goes beyond persuasion and coerces or forces its customer to buy the tied product in order to obtain the tying product.

*Bob Maxfield, Inc. v. American Motors Corp.,* 637 F.2d 1033, 1037 (5th Cir.) *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981).

An expert hired by Plaintiffs, John Walker, agrees with the Fifth Circuit in this regard. In his expert's report he states that "... electronic access is not required in order to operate an agency profitably and generate earnings commensurate with the agent's alternatives." *See* Defense Exhibit 5

(¶ 14). No evidence has been presented to show that Farmers coerced or forced Plaintiffs to obtain Farmers' computers.

d. *Farmers does not possess sufficient economic power to compel the purchase of an alleged tied product.*

■ In their Motion for Summary Judgment, Defendants indicate that not only is the electronic access not a product, but even if it was a product, Farmers would not have the requisite economic power in that area to violate antitrust laws. There is no evidence to support any proposition that Farmers has sufficient market power in the insurance sales industry to give rise to a violation of antitrust law. Farmers' share in any geographic area within which it operates is insignificant. Farmers has no power in the insurance sales market to force its agents to remain Farmers agents. Farmers only has the complete power to control access to its own policyholder information. *See* Defense Exhibit 7 (Feinstein affidavit) and Defense Exhibit 8 (Feinstein expert report).

As stated previously the Agency Appointment Agreement obligates Farmers to provide policyholder information to its agents. The agents have numerous ways to access this desired policyholder information in lieu of electronic access to the FANS. *See* Defense Exhibit 9 (Walker deposition, pp. 93–94). The access to the FANS has been increased in 1994, subsequent to the filing of this suit, to provide at least six different options for agents to access the FANS. *See* Defense Exhibit 19 (Agency Information Manual Systems Manual).

Defendants contend that one of the evils protected in the antitrust laws is the leveraging of control of one market to increase control of another market. Even assuming as alleged by Plaintiffs that electronic access to the FANS is a product, the marketshare for the tied product, IBM-designed computer equipment specifically configured to access FANS, is so small as to have no effect on competition in the computer sales market. Therefore, there can be no illegal tying arrangement. *See Jefferson Parish,* 466 U.S. at 16, 104 S.Ct. at 1560; *Breaux Bros.,* 21 F.3d at 87–89.

Judge Higgenbotham recently stated "when a party has no control over a tied market, the dangers usually created by a tying arrangement do not exist." *Breaux Bros.,* 21 F.3d at 89. There has been no, nor could there be any, anti-competitive effect in the alleged "tied" product market. Farmers has no economic interest in a market for computer equipment. There is no evidence to support any allegation that Farmers is a factor in the market of computers, even of the type and variety specifically required to access FANS, which is the IBM System 36. *See* Defense Exhibit 8 (Weinstein expert report ¶ 22).

Citing an example used in the Weinstein expert report, in the year 1990, ten million (10,000,000) units of personal computers were shipped in the United States, IBM shipped two hundred and fifty thousand (250,000) System 36 computers in August of 1990, and Farmers purchased approximately 500 System 36 computers per year from IBM in the early 1990s. The requirement by Farmers to purchase a System 36 IBM computer for access to its FANS had minimal effect on any computer equipment market in the United States. *See* Defense Exhibit 8.

e. *Plaintiffs have not suffered "antitrust injury."*

■ As part of the private right of action under section four of the Clayton Act, a plaintiff must prove "fact of damage" or "proof of impact." Fact of damage consists of two elements: injury to the plaintiff and causation attributable to the antitrust violation. *Nichols v. Mobile Bd. of Realtors,* 675 F.2d 671, 676 (5th Cir.1982). The Plaintiffs have not designated an expert on damages and the deadline for such designation pursuant to the scheduling order has passed. The Plaintiffs have failed to adduce any evidence that there was comparable equipment available at lower prices which could have been purchased by members of the proposed Vinson class. *See* Defense Exhibit 9 (Walker deposition); Defense Exhibit 20 (Dowden deposition); and Defense Exhibit 21 (Lubniewski Deposition).

As for the Moon class, there has been no evidence of any adverse financial impact on any Moon class member because of the mem-

ber's determination not to purchase computer equipment. Plaintiffs must prove an injury flowing from the Defendants' illegal acts. If there is no antitrust injury, there is no violation of the antitrust laws. *Cargill, Inc. v. Monfort of Colorado, Inc.*, 479 U.S. 104, 110, 107 S.Ct. 484, 489, 93 L.Ed.2d 427 (1986); *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 488–89, 97 S.Ct. 690, 697, 50 L.Ed.2d 701 (1977).

For the Vinson class, Plaintiffs' basic allegation is that there was equipment on the open market which would have performed the same function as the Farmers required equipment but which cost less than the Farmers equipment. Other than this bald allegation, Plaintiffs have presented no evidence with respect to the cost of alternative computer choices. *See* Defense Exhibit 23 (Vinson and Moon responses to first set of interrogatories number 6); Defense Exhibit 10 (Vinson deposition); Defense Exhibit 11 (Moon deposition); and Defense Exhibit 22 (Lively deposition).

Even Plaintiffs' experts provided no facts with regard to specific types or names of computers, or the price thereof, which would have been available for any of the years at question in this lawsuit. *See* Defense Exhibit 9 (Walker deposition); Defense Exhibit 20 (Dowden deposition); and Defense Exhibit 21 (Lubniewski deposition).

The Moon class plaintiffs were the agents who decided not to purchase computer equipment from Farmers. In the First Amended Complaint by Vinson and Moon at paragraph 37, the Moon class alleges that they were "injured and damaged in their business in a substantial amount." In response to Farmers interrogatories, the Plaintiffs stated that the damages would be in the form of lost commissions and lost profits. *See* Defense Exhibit 23 (Responses to Defendants' First Set of Interrogatories number 3). There has been no evidence of any lost profits or lost commissions. Neither the Plaintiffs affidavits nor the affidavits of their designated experts presents any evidence with respect to specific damages suffered by the Plaintiffs as a result of the alleged purchase requirement.

*f. There is no genuine issue of material fact with respect to Plaintiffs' conspiracy allegations.*

Plaintiffs allege in their First Amended Complaint ¶ 17 that there are five separate companies involved in issuing various types of insurance who are collectively known as "Farmers." The Plaintiffs have alleged that these five companies combined, contracted, and conspired with each other and with all other co-conspirators to restrain interstate trade and commerce. Plaintiffs have alleged in their response to the motion for summary judgment that they themselves were also joint co-conspirators in this conspiracy to violate the antitrust laws.

In light of *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 772, 104 S.Ct. 2731, 2741–42, 81 L.Ed.2d 628 (1984) and *Plueckhahn v. Farmers Insurance Exchange*, 749 F.2d 241, 245 (5th Cir.), *cert. denied*, 473 U.S. 905, 105 S.Ct. 3527, 87 L.Ed.2d 652 (1985), an allegation of participation in a conspiracy by a plaintiff or among subsidiaries is insufficient by itself to establish that a conspiracy existed. There has been no other evidence presented to this Court by way of affidavit, interrogatory, or admissible evidence to show this Court that a conspiracy existed.

Plaintiffs in their Response to Defendants' Motion for Summary Judgment point out a number of facts with regard to the requirements for access to the FANS. There is no doubt from the evidence presented that Farmers made a decision that access to the FANS would only be permitted with equipment specifically approved by Farmers. This decision initially required that agents purchase IBM computers from Farmers. It was not until July of 1993 that agents were permitted to purchase computers from other sources.

Farmers' decision to control access was made for a number of legitimate, corporate reasons. Originally, as discussed in argument before this Court, no options other than the IBM equipment may have existed, because no other computer was available which was capable of performing the desired functions. Obviously, there are now a number of products on the open market in addition to

the IBM System 36 which are capable of properly accessing the FANS. However, the Plaintiffs have presented no evidence regarding the alternative systems, or the price thereof. Plaintiffs have presented no evidence that Farmers did anything more than establish a business policy in an attempt to control access to its system in a uniform and safe manner. At best, the controverting facts offered by Plaintiffs in their response show simply that various computer options were available on the open market during the time period when Farmers required IBM equipment. It is possible that those available options may have cost less than the IBM system but no evidence supports this allegation. The facts that Farmers did not allow access except through approved computers, various agents chose not to buy computers from Farmers because of the cost or chose not to buy computers at all, or that agents in fact bought computers from Farmers do not show antitrust injury or damages, or coercion on the part of Farmers. All that these facts establish is that a number of agents were displeased with the options available to them. However, displeasure at the choices available to you when there is no requirement to act does not constitute an antitrust injury.

From a technical or personal opinion standpoint, Plaintiffs' experts do not agree with Farmers' method of limiting access. *See* Plaintiffs' Exhibit 114 (Walker affidavit) and Defense Exhibit 21 (Lubniewski affidavit). No illegal tying arrangement arises from the undisputed fact that Farmers at certain periods of time only allowed access to its FANS only through computer equipment purchased from Farmers. An internal corporate policy which regulates access to corporate files and records, in this case policyholder information, does *not* fit the definition of an illegal tying arrangement subject to the antitrust laws.

Whether the equipment could have been obtained cheaper or even whether Farmers made money on the equipment that it sold the agents is not a "material fact issue" as to whether there was a product, whether the products were tied, whether agents were coerced into the purchase of equipment they did not want, or whether agents chose not to purchase equipment they did not want and therefore were damaged.

There has been no showing that the Plaintiffs were damaged, there has been no showing that electronic access is a product, and there has been no showing of market share in the tying or tied product to give rise to an antitrust violation. For these reasons, the undersigned recommends that the District Court **GRANT** Defendant Farmers Motion for Summary Judgment against Plaintiffs Vinson and Moon.

C. *Summary judgment against United Farmers Agents Association.*

**1. United Farmers Complaint.**

On June 18, 1992, the United Farmers Agents Association, Inc. (UFAA) filed an antitrust claim against the Farmers Insurance agencies alleging antitrust "tying" claims in violation of section one of the Sherman Act and section three of the Clayton Act arising out of Farmers development and implementations of the Farmers Agency Network System (FANS). *See* UFAA Second Amended Original Complaint. Plaintiffs Vinson and Moon filed antitrust actions alleging the same activities on the same date. The only difference between the two complaints is that Plaintiffs Vinson and Moon sought damages for alleged past violations and UFAA sought only prospective injunctive and declaratory relief.

The UFAA claim seeks a prospective declaratory judgment that the alleged tie violates section one of the Sherman Act and section three of the Clayton Act. It seeks a determination and declaration that the Agency Appointment Agreement provided by Farmers does not confer upon Farmers the right to impose the alleged requirements that agents purchase computer equipment. *See* UFAA Second Amended Original Complaint, ¶¶ 43–50. In addition, UFAA seeks an injunction pursuant to section sixteen of the Clayton Act that Farmers cannot condition access to its files on the purchase of computer equipment. *See* UFAA Complaint, ¶¶ 51–54.

In its supplemental claims, UFAA seeks a prospective declaration of rights and injunc-

tive relief as to the rights and obligations of Farmers and Farmers agents pursuant to the Farmers appointment agreement. (UFAA Complaint ¶¶ 33–42).

### 2. Defendants' Motion.

The Defendants seek summary judgment on UFAA's claims for three reasons which will be up taken in turn in this discussion.

Defendants contend that UFAA has admitted that its allegations of Farmers' current policies are false. The Defendants allege that at the class certification hearing held on December 15, 1993 before United States District Judge James R. Nowlin, UFAA, through the statements of its counsel, admitted to the Court that the agents were not "at that time" subject to any allege tying arrangement:

> And my clients are prohibited from ... or at least were in the past from accessing the data with the computer software and so forth other than from and only through Farmers.
>
> Now, you are going to hear some evidence today, that is not the case and I want to put that on the table right up front. Today that is not the case anymore. But from approximately 1980 to approximately the middle of 1993 that was the case, and that's the reason this lawsuit was initiated.

Defense Exhibit 15 (Transcript of class certification hearing p. 5)

The Defendants allege that at this stage of the proceedings, with all the evidence presented and all discovery completed, Farmers' policies never constituted a tying arrangement and could not do so and that literally thousands of Farmers agents have obtained access to the FANS without purchasing computer equipment from Farmers. *See* Defense Exhibit 3 (Wong Affidavit, ¶ 9). Defendants allege that, in fact, in November of 1990, the attorney for UFAA sent a letter to the then UFAA secretary, now Plaintiff, Robert Moon, advising that it was the attorney's understanding that Farmers had not imposed a computer purchase requirement. *See* Defense Exhibit 16. Defendants allege that, from at least 1990 and to the admission in open court in 1993 that "there is no requirement to purchase from Farmers to gain access to FANS. Thus, Defendants assert that Plaintiff UFAA is not entitled to prospective injunctive relief on the undisputed facts now before the Court.

The Defendants contend that there is no genuine issue of material fact that Farmers is not conditioning access to FANS on the purchase of computer equipment. Section sixteen of the Clayton Act requires that there is a "threat" of impending antitrust injury to justify the extraordinary relief of imposing an injunction. The Defendants allege that there are no facts to show that there is any threat of impending antitrust injury. Specifically, the Defendants state that, with the introduction in May of 1994 of the Agency Information Management System (AIMS), agents no longer can purchase or lease computer equipment directly from Farmers for use with the FANS. Agents may continue to obtain access to FANS when the necessary equipment is obtained from third parties. *See* Defense Exhibit 1 (Butler Affidavit, ¶ 8).

Defendants allege that *Keener v. Sizzler Family Steak Houses,* 597 F.2d 453 (5th Cir.1979) and *Robert's Waikiki U–Drive, Inc. v. Budget Rent–A–Car Systems, Inc.,* 732 F.2d 1403 (9th Cir.1984), establish that the defendant must have an economic interest in the sale of the tied product in order for an antitrust violation to take place. Because the undisputed facts show that as of July of 1993 and more specifically since May, 1994, Farmers does not have an economic interest in the tied product, there can be no tying arrangement, and therefore no antitrust injury.

Defendants contend that UFAA cannot meet the stringent requirement of immediacy of impending antitrust injury which is necessary to invoke injunctive relief pursuant to section 16 of the Clayton Act. The remedy of an injunction is an extraordinary remedy and requires a showing of irreparable harm and therefore it requires that a plaintiff prove the existence, more than mere possibility, of some cognizable danger of recurrent violations. *United States v. W.T. Grant Co.,* 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953). Defendants allege that here UFAA cannot, and has not, shown that there is any significant threat of antitrust injury

from any impending violations. Accordingly, Defendants assert that UFAA is not entitled to injunctive relief and summary judgment should be granted to Farmers and against UFAA.

### 3. Plaintiff's Response.

Plaintiff UFAA contends in response that all a plaintiff need prove is an actual injury by purchasing a tied product. *Eastman Kodak Co. v. Image Technical Services, Inc.,* 504 U.S. 451, 460, 112 S.Ct. 2072, 2079, 119 L.Ed.2d 265 (1992). Plaintiffs allege that the mere possibility that there is a danger of recurring violations is sufficient to survive a motion for summary judgment when permanent injunctive relief is sought.

### 4. Analysis.

Plaintiff UFAA requests injunctive relief and also asserts pendent state law claims. The Court addresses each in turn:

a. *Availability of injunctive relief.*

■ This Court finds that *Shanks v. City of Dallas, Texas,* 752 F.2d 1092 (5th Cir. 1985), controls the availability of injunctive relief. The party seeking relief must show that there exist some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive. *W.T. Grant,* 345 U.S. at 633, 73 S.Ct. at 897; *Walls v. Mississippi Dep't of Public Welfare,* 730 F.2d 306, 314 (5th Cir. 1984). Having previously recommended that the District Court find that there is no illegal tie based on the facts presented to it, the undersigned recommends that the District Court also find that there are no facts to support a request for injunctive relief.

■ Plaintiff UFAA has cited to a number of facts allegedly supporting its position that there will be continuing injury if an injunction is not issued by the Court. In reviewing all of the evidence cited by Plaintiff UFAA and all the other evidence presented in support of its response to the motions for summary judgment, this Court can find no evidence of any continuing violation or injury.

The Court is somewhat confused by Plaintiff UFAA's allegations at page eleven of their response brief that there is a "cogniza-

ble danger of continuing and recurrent antitrust violations and a very real risk of irreparable harm of forced terminations as retribution by Farmers against members." In reviewing the mountains of affidavits, deposition excerpts, answers to interrogatories and reading all the briefs in support, responses, and replies thereto and having conducted multiple hearings on various discovery requests, this Court has heard no evidence and has found no evidence in any of the exhibits that any agent has ever been threatened with termination if they did not buy a computer from Farmers to access the FANS, nor that any agent would be terminated by Farmers if they took part in this litigation.

■ Plaintiff UFAA alleges in its response to the Defendants' Motion that this Court is bound by United States District Judge James R. Nowlin's rulings made in his order denying Defendants' 12(b)(6) motion in which he found UFAA to be a suitable representative of the Farmers agents. However, the standard of review used for a 12(b)(6) motion in which a determination is made whether the pleadings state a claim upon which relief can be granted presents the Court considering the motion with a completely different question and burden of proof from the review given evidence submitted in conjunction with a motion for summary judgment under Rule 56, in which rulings of law are made if no genuine issues of material fact are presented. Judge Nowlin's ruling made at the early stage was entirely appropriate. However, that ruling does not bind the Court when confronted with different requests for relief and different evidentiary standards at a later stage of the litigation.

The Court must now decide whether there are any controverting facts that will support the Plaintiff's allegations contained in their pleadings which are material issues sufficient to allow the case to proceed to trial. This Court finds there are no controverted material issues of fact to prevent summary judgment for the Defendants against Plaintiff UFAA.

■ The Defendants contend that there are no set of facts that could support a request for declaratory judgment because

the practice about which Plaintiff complains in its Second Amended Complaint is no longer occurring. In addition, complete discovery has demonstrated that the challenged practice cannot reoccur because Farmers no longer sells computer equipment, the alleged tied product. Therefore, declaratory relief is unavailable. *S.E.C. v. Medical Committee for Human Rights,* 404 U.S. 403, 407, 92 S.Ct. 577, 579–580, 30 L.Ed.2d 560 (1972).

b. *Remand of state law causes of action.*

The Defendants request that this Court dismiss the UFAA supplemental pendent state law claims. Supplemental jurisdiction is discretionary with the trial court. The UFAA claim requesting that this Court make determinations with regard to the application of the Agency Appointment Agreement between Farmers and all its agents, fourteen thousand in number (14,000) working in twenty-nine states, presents an issue of state contract law arising in multiple state fora. *See* UFAA Second Amended Complaint. The complaints made by UFAA with regard to the Agency Appointment Agreement have nothing to do with any of the other alleged illegal activities by Farmers. Many of the complaints deal specifically with interpretation of the Agency Appointment Agreement with regard to termination of an agent, specifically whether Farmers can terminate an agent because the agent has fallen below a certain profit level.

This Court recommends that the United States District Court decline to exercise its pendent (supplemental) jurisdiction over claims arising under state law and dismiss them without prejudice.

D. *Class certification.*

1. **Defendants' motion to dismiss class under 23(b)(2) and deny class under 23(b)(3).**

Defendants have moved to dismiss as a class action pursuant to Fed.R.Civ.P. 23(b)(2) and to deny certification pursuant to Fed.R.Civ.P. 23(b)(3). There is also pending a separate Plaintiffs' Motion to Certify a Class under Fed.R.Civ.P. 23(b)(3) and Defendants' response to that motion.

The Defendants allege in their motion to dismiss that the Plaintiffs have now affirmatively demonstrated that they have no case, whether individually or on behalf of a damage class. Defendants assert that: Plaintiffs have at all times been aware that Farmers did not require the purchase of computer equipment; and second, Plaintiffs have affirmatively demonstrated that Farmers made a conscious business decision *not* to mandate the purchase of computer equipment.

On January 4, 1994 United States District Judge James R. Nowlin entered an order on class certification. Judge Nowlin denied the Plaintiffs' motion for certification of a damage class pursuant to Fed.R.Civ.P. 23(b)(3). On the Court's own motion, Judge Nowlin ordered that the case continue during the remaining discovery period as a class action pursuant to Fed.R.Civ.P. 23(b)(2). *See* Defense Exhibit 25 (Judge Nowlin's order pp. 7–8, also quoted in this report and recommendation at p. 11–12). The certification of the class under 23(b)(2) grounds was to allow discovery to be conducted to ascertain the class status, possible claims, and the potential for any damage classes under 23(b)(3). As this Court is aware, under Fed.R.Civ.P. 23(c)(1) "an order under this subdivision may be conditional and it may be altered or amended before the decision on the merits." *See Salazar–Calderon v. Presidio Valley Farmers Ass'n,* 765 F.2d 1334, 1350 (5th Cir.1985), *cert. denied,* 475 U.S. 1035, 106 S.Ct. 1245, 89 L.Ed.2d 353 (1986). It is incumbent upon any court reviewing an action certified as a class, or requested to be certified as a class, to review the evidentiary status of the class request as the proceedings develop. *Id.*

Farmers contends that, if the Court reviews the over one hundred affidavits from Farmers agents, the issue is simply that these agents made individual decisions to purchase or not to purchase computer equipment and that Farmers did not compel anyone to purchase anything. Farmers contends that these affidavits are uncontroverted. *See* Defense Exhibit 26. Farmers also contends that the Plaintiffs have abandoned any theory of recovery under 23(b)(3) for damage since they have conducted no dam-

age discovery. Farmers asserts that not only did each Farmers agent make an individual decision whether or not to purchase computer equipment, but also thousands of these agents found alternative means to electronically access the FANS without purchasing any computer equipment at all. *See* Defense Exhibit 3 (Wong affidavit ¶¶ 8–9); Defense Exhibit 4 (Larsen affidavit ¶¶ 25, 28). These agents have had access to the policyholder information through what has been called in this lawsuit "manual access" through telephones, facsimile machines, mail service, and the use of manuals contained in each agent's office. Farmers contends that Plaintiffs themselves concede these uncontroverted facts, citing the Court to Defense Exhibit 27, which is the Plaintiffs' brief in support of class certification at p. 4, ¶¶ 3–4. Farmers contends that during discovery Plaintiffs produced a letter from UFAA lawyer John S. Heim addressed to Plaintiff Dale Moon in which the counsel stated that "no such requirement is stated in existing agency appointment agreements and "as I understand it no such requirement (to purchase computers) has yet been imposed." This letter was published in the *Voice*, the UFAA newsletter, and is admissible pursuant to Fed.R.Evid. 801(d)(1).

Farmers additionally contends that Plaintiffs' expert, Dr. Walker, concludes "electronic access is not required in order to operate an agency profitably and generate earnings commensurate to the agent's alternatives." *See* Plaintiffs' Exhibit 114 (Walker affidavit ¶ 14). Farmers asserts that both the letter and affidavits and other evidence adduced during the proceedings show that Farmers have never imposed a tie between "access" or "electronic access" to its policyholder information and the purchase of computer equipment.

Dr. Walker continues in other testimony to state that "in fact Farmers typically discourages agents from purchasing a computer until the agents have a large number of policies in force." *See* Plaintiffs' Exhibit 114 (Walker affidavit ¶ 16). Dr. Walker in his deposition states that in his opinion, supporting the admissions he made in his affidavits, "agents are not required to purchase access." *See*

Defense Exhibit 9 (Walker deposition p. 78). Defendants state that there is additional evidence of the no purchase requirement presented in Defense Exhibit 28, an article from the *Voice*, containing a review of the Farmers dial-in access to the computer system. The article states that although expensive, it is an individual agent's decision about whether or not a computer should be purchased. Farmers contends that these evidentiary points raise the question about whether individual issues predominate over class issues and therefore speak against any class certification.

Plaintiffs' response to this particular motion cites this Court to the order issued by Judge Nowlin on January 4, 1994 and to the initial evidence produced to Judge Nowlin at the time of the original class motion hearing. The documents submitted by both Plaintiffs and Defendants for the original class motion hearing before Judge Nowlin have again been submitted as exhibits to the motions for summary judgment and for dismissal and have been considered by the undersigned in this recommendation.

Farmers contends additionally that Plaintiffs have affirmatively demonstrated that Farmers made a conscious business decision to not mandate the purchase of computer equipment. Farmers contends that not only have the Plaintiffs *not* established a tie violation, they have in actuality established that the Defendants made a conscious decision to *not* impose the alleged tying arrangement about which Plaintiffs complain. Farmers asserts that this evidence was adduced by Plaintiffs in connection with their discovery when an internal memorandum dated June 29, 1990 was provided to the Plaintiffs. This memorandum was from Farmers employee Jack Lewis to other Farmers employees Jim Roberts and Dennis Shanley. This memorandum began an exchange of memoranda and proposals all produced during discovery, *see* Defense Exhibits 30 and 31, which discuss in detail, as internal Farmers memoranda, both the legal and business options of mandating electronic access to the policyholder information. In Defense Exhibit 31 under the topic of "Internal Issue No. 1," it is concluded that "the companies would be in

breach of its agreement with existing agents if it required its agents to lease, purchase, or have access to computer equipment." The memo concludes that the companies (Farmers) will "encourage but NOT REQUIRE existing agents to purchase, lease, or have access to a computer and that the companies have as a matter of policy decided to maintain a dual system." (emphasis in original memorandum). The memo continues further with "Internal Issue Number 3" where the legal department advises and concludes that it would not be possible to require its new agents to lease or purchase an agency computer system and related service from the companies without creating a franchise.

In the deposition taken of Farmers employee J.R. Roberts (Defense Exhibit 32), Mr. Roberts testified that there was discussion about mandating agents to have computer access to the policyholder information but this idea was rejected for both business and legal reasons with respect to both new agents and existing agents.

Plaintiffs make no specific response to Defense Exhibit 32 and to the discussions regarding Farmers' internal memoranda. Plaintiffs have offered no evidence other than to request the Court to not "disturb" Judge Nowlin's original class findings. The undersigned finds that argument both unpersuasive and in direct contravention of Fed. R.Civ.P. 23(b)(1), as quoted above.

### 2. Plaintiffs' Motion to Certify Class under 23(b)(3).

The Plaintiffs have moved to certify a class with respect to damages pursuant to Fed. R.Civ.P. 23(b)(3) (Doc. # 203 filed November 14, 1994). This motion requests that the Court certify a class under Rule 23(b)(3) pursuant to the original order of Judge Nowlin on January 4, 1994. Plaintiffs argue that this motion was filed to comply with the scheduling order deadline that all documents be filed by November 14, 1994. By their own request and contained in the motion itself, Plaintiffs assert that the January 4, 1994 order established the "procedural steps to be followed by the parties in this matter, which do not include any consideration of a damage class until the issue of liability has been determined." The only evidence in support of the motion is a copy of Judge Nowlin's January 4, 1994 order.

Defendants filed a response to Plaintiffs' motion alleging that Plaintiffs have failed to sustain their burden of proving the essential elements required for certification of a damage class pursuant to Fed.R.Civ.P. 23(b)(3). In reviewing the file this Court finds that a motion to bifurcate filed by the Plaintiffs on June 24, 1994 was denied on September 16, 1994. Additionally, Plaintiffs' request that an evidentiary hearing be held on the issue of liability was denied by the undersigned on October 3, 1994, and the appeal of that order was affirmed by Judge Nowlin on October 21, 1994. A review of the Plaintiffs' two page motion to certify, the response, and the prior discussion of the evidentiary matters brought forward in other motions for summary judgment shows there is no evidence establishing common proof of elements of facts of damage, no evidence that the tying arrangement existed, and that therefore Plaintiffs have not met their burden to establish elements for a damage class action pursuant to the provisions of Rule 23(b)(3). *See Response of Carolina, Inc. v. Leasco Response, Inc.*, 537 F.2d 1307, 1321 (5th Cir.1976). Therefore, the Court recommends that the Defendants' Motion to Dismiss as a Class Action under Fed.R.Civ.P. 23(b)(2) be **GRANTED** and the Plaintiffs' Motion for Certification as a Class under Rule 23(b)(3) be **DENIED**.

### E. *In the alternative, partial summary judgment against Vinson and Moon on statute of limitations.*

#### 1. Defendants' Motion.

This case was filed on June 18, 1992. Defendants request summary judgment as to members of the class who entered into a computer installment sales and security agreement and an agency network service agreement with Farmers prior to June 18, 1988 (some but not all of the members of the Vinson class). Because Vinson entered into a computer sales agreement prior to June 18, 1988, he is included in the sub-class subject to this summary judgment motion. *See* Defense Exhibit 10 (Vinson deposition).

Defendants similarly request summary judgment as to members of the class who decided prior to June 18, 1988 to *not* enter into a computer installment sales and security agreement with Farmers (some but not all of the members of the Moon class). There is no evidence in the motion whether Plaintiff Moon is a member of this sub-class.

Defendants assert that the cause of action accrued in the present case for each class member when that class member either purchased the computer equipment from Farmers or decided not to purchase the equipment. Defendants point out that the Clayton Act provides a four year statute of limitations for suits alleging antitrust violations. 15 U.S.C. § 15b. The statute of limitations therefore bars recovery by any class member whose claims arose more than four years before Plaintiffs filed suit.

### 2. Plaintiff's Response.

Plaintiffs assert that the causes of action arising prior to June 18, 1988 are not barred both because the Defendants have committed continuing violations of law and because the Plaintiffs' cause of action did not accrue until their damages could be ascertained.

### 3. Analysis.

An antitrust cause of action accrues and the statute of limitations begins to run when a defendant commits an act that injures a plaintiff's business. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1051 (5th Cir. 1982), *cert. denied*, 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983).[2] It is clear that if some members of the class made a decision with respect to purchasing the computer equipment prior to June 18, 1988, their claims are barred unless they can show that they fall within an exception to the bar of the statute of limitations.

There are two bases for permitting suit more than four years after a cause of action accrues: continuing violation and revival.[3]

*Id.*, (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.* 401 U.S. 321, 338–40, 91 S.Ct. 795, 806–07, 28 L.Ed.2d 77 (1971)); *Hanover Shoe, Inc. v. United Shoe Machinery Corp.*, 392 U.S. 481, 501 n. 15, 88 S.Ct. 2224, 2236 n. 15, 20 L.Ed.2d 1231 (1968). First, "the 'continuing violation' or 'continuing conspiracy' exception to the four year statute of limitations permits a new cause of action to accrue whenever the defendant commits an additional overt act in furtherance of the antitrust conspiracy or commits an act that by its very nature is a continuing antitrust violation." *Kaiser,* 677 F.2d at 1051. Second, the revival exception "involves situations where the defendant's antitrust act is 'revived' outside the limitations period ... because when the act originally occurred, the plaintiff's damages were speculative or unprovable." *Id.*

#### a. *Continuing violation.*

Plaintiffs assert that Defendants' "policy of misleading agents with respect to access to FANS" was an additional overt act amounting to a continuing violation sufficient to revive the barred causes of action. However, continuing conduct within the limitations period which merely furthers the initial antitrust violation does not prevent the running of the statute of limitations. *See Al George, Inc. v. Envirotech Corp.*, 939 F.2d 1271, 1275 (5th Cir.1991) (antitrust action based on sham litigation accrues when suit filed, continued prosecution of suit does not toll running of limitations or create new cause of action). Even assuming that Farmers continued to mislead its agents after June 18, 1988, this continuing conduct is not an injurious act separate from the prior alleged misconduct. An antitrust suit "must be based on some injurious act actually occurring during the limitations period, not merely the abatable but unabated inertial consequences of some pre-limitations action." *TCA Building Co. v. Northwestern Resources*, 861 F.Supp. 1366, 1377–78 (S.D.Tex.

---

**2.** In *Kaiser Aluminum* the Court found that a counterclaim alleging an illegal tying arrangement was barred by the statute of limitations. The contract made the basis of the counterclaim was signed more than four years prior to the claim being alleged. The Court found that, because damages, although not definite in amount, were not speculative or unprovable at the time

the contract was signed, summary judgment was appropriate.

**3.** Revival occurs when the damages are speculative or unprovable at the time of the antitrust violation. *Kaiser,* 677 F.2d at 1052.

1994), *citing Kaiser,* 677 F.2d at 1051 and *Poster Exchange Inc. v. National Screen Service Corp.,* 517 F.2d 117, 128 (5th Cir. 1975).

Plaintiffs have failed to show a continuing violation. As such, the statute of limitations cannot be tolled on that basis.

b. *Speculative or unprovable damages.*

■ Plaintiffs assert that, because their damages were speculative at the time the contract was signed, the statute of limitations does not bar claims arising prior to June 18, 1988. Plaintiffs base this argument on provisions in the agency network service agreement and the computer installment sales and security agreement.

The agency network service agreement provides that an agent was only permitted to utilize FANS with "equipment authorized by Farmers including but not limited to peripherals, memory enhancements and additional disk capacity." Plaintiffs argue that this provision establishes that, because the computer could be upgraded, their damages were speculative. This argument clearly fails. Plaintiffs post-suit speculation regarding prospective upgrades in their computer systems does not render their damages speculative or unascertainable at the time the service agreement was signed.

Plaintiffs additionally argue that a provision in the Sale and Security Agreement prohibiting the buyer from making changes in the computer equipment unless authorized by Farmers also rendered their damages speculative at the time they signed the contract. However, the fact that the computers could not have additional equipment added to them without Farmers' consent does not establish that the class members' damages could not have been calculated at the time they signed the Sale and Security Agreement.

The class members' damages were reasonably ascertainable at the time the decision was made whether or not to purchase the computer system from Farmers. Any wrongful conduct by Farmers in misleading the class members does not revive the suit for purposes of the statute of limitations. Therefore, the statute of limitations bars suit by any class members who entered into a Computer Installment Sales and Security Agreement with Farmers prior to June 18, 1988, or who decided prior to June 18, 1988 to *not* enter into a Computer Installment Sales and Security Agreement. Summary judgment in favor of Farmers should therefore be granted with respect to all class members whose claims accrued prior to June 18, 1988.

## V.

### *RECOMMENDATION*

The Magistrate Court hereby recommends to the District Court as follows:

(1) **GRANT** Defendants' Motion for Summary Judgment against Plaintiffs Vinson and Moon and **DISMISS WITH PREJUDICE** the claims asserted by Plaintiff Vinson and Moon against Defendants;

(2) **GRANT** Defendants' Motion for Summary Judgment Against Plaintiff UFAA and **DISMISS WITH PREJUDICE** the claims asserted by UFAA. The Court also recommends that the District Court **DISMISS WITHOUT PREJUDICE** all state law causes of action.

(3) **GRANT** Defendants' Motion to Dismiss as a Class Action; and

(4) **DENY** Plaintiffs' Motion to Certify as a Class Action.

In the alternative and only if the above recommendation is not adopted with respect to the summary judgments in favor of Defendants, the Magistrate Court recommends that the District Court

(5) **GRANT** Defendants' Motion for Partial Summary Judgment Against Vinson and Moon based on the statute of limitations and **DISMISS WITH PREJUDICE** all claims of any class members arising prior to June 18, 1988.

## VI.

### *WARNING*

Any party may file objections to this recommendation to show cause why this should not be dismissed. Failure to file written objections to the findings and recommenda-

tions contained in this report within ten (10) days from the date of its receipt shall bar an aggrieved party from receiving a de novo review by the district court of the findings and recommendations in this report, *see* 28 U.S.C. § 636(b)(1)(C), and shall bar an aggrieved party from attacking the findings and recommendations contained in this report on appeal, *see Nettles v. Wainwright,* 677 F.2d 404, 408–410 (5th Cir.1982) (Unit B *en banc* ); *see also, Thomas v. Arn,* 474 U.S. 140, 150, 106 S.Ct. 466, 472, 88 L.Ed.2d 435 (1985) (rehearing denied) (bar of attack on appeal held constitutional and not in violation of Federal Magistrates Act.)

The clerk is directed to mail a copy of this Report and Recommendation to all parties by return mail, receipt requested.

SIGNED this 6th day of April, 1995.